UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

|  |  |  |
|---|---|---|
| | : | |
| BLUE SKY THE COLOR OF IMAGINATION, | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00624 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER</u>

Upon reading plaintiff's motion for summary judgment, defendant's cross-motion for summary judgment, and the parties' respective responses thereto; and upon consideration of other papers and proceedings had herein; it is hereby

**ORDERED** that plaintiff's motion for summary judgment be, and hereby is, denied; and it is further

**ORDERED** that defendant's cross-motion  for summary judgment be, and hereby is, granted; and it is further

**ORDERED** that this action be, and hereby is, dismissed.

_____
JANE A. RESTANI, JUDGE

Dated: New York, New York
This _____ day of _____ , 2023.

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

|  |  |
|---|---|
| | : |
| BLUE SKY THE COLOR OF IMAGINATION, | : |
| | : |
| Plaintiff, | :       Court No. 21-00624 |
| v. | : |
| | : |
| UNITED STATES, | : |
| Defendant. | : |
| | : |

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendant, the United States, respectfully moves this Court for an Order: (1) denying plaintiff's motion for summary judgment; and (2) granting our cross-motion for summary judgment and holding that the merchandise at issue is classifiable in subheading 4820.10.40 of the Harmonized Tariff Schedule of the United States.

The facts and reasoning for defendant's cross-motion for summary judgment are set forth in the attached memorandum, the exhibits submitted with plaintiff's motion for summary judgment, and the exhibits submitted with our cross-motion.

WHEREFORE, defendant respectfully requests that an Order be entered denying plaintiff's motion for summary judgment, granting defendant's cross-motion for summary judgment and dismissing plaintiff's complaint in its entirety, and granting such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Monica P. Triana
MONICA P. TRIANA
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230

Date:  November 17, 2023          *Attorneys for Defendant*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

---

|  |  |
|---|---|
| BLUE SKY THE COLOR OF IMAGINATION, | : |
|  | : |
|  | : |
| Plaintiff, | :    Court No. 21-00624 |
| v. | : |
|  | : |
| UNITED STATES, | : |
| Defendant. | : |

---

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

MONICA P. TRIANA
Trial Attorney
Civil Division, Dept. of Justice
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346

Of counsel:                     New York, New York 10278
Fariha Kabir, Esq.              *Attorneys for Defendant*
Office of Assistant Chief Counsel   Tel. No. 212-264-9240 or 9230
International Trade Litigation
U.S. Customs and Border Protection

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 3

    A.  The Merchandise At Issue ........................................................................ 3

        **1.**  Baccara Weekly/Monthly Planner (Item No.110211-21) ................ 4

        **2.**  Joselyn Weekly/Monthly Planner (Item No.110394-21) ................ 6

        **3.**  Classic Red Weekly/Monthly Planner (Item No.111288-21) ......... 7

        **4.**  Classic Red Weekly/Monthly Planner (Item No.111291-21) ......... 8

    B.  Sale And Marketing Of The Planners ..................................................... 10

QUESTION PRESENTED ...................................................................................... 13

SUMMARY OF ARGUMENT ............................................................................... 14

ARGUMENT ......................................................................................................... 15

   I.   SUMMARY JUDGMENT FOR THE GOVERNMENT IS WARRANTED ................ 15

   II.   THE LEGAL FRAMEWORK ........................................................................ 15

   III.   THE SUBJECT MERCHANDISE IS NOT CORRECTLY CLASSIFIED UNDER SUBHEADING 4910.00.20, HTSUS ................ 17

   IV.   THE SUBJECT MERCHANDISE IS PROPERLY CLASSIFIED IN SUBHEADING 4820.10.40, HTSUS ........................ 24

CONCLUSION ...................................................................................................... 30

# **TABLE OF AUTHORITIES**

## **Cases**

*Airflow Technologies, Inc. v. United States*,
    524 F.3d 1287 (Fed. Cir. 2008)........................................................................... 16

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)........................................................................................... 15

*Aves. in Leather, Inc. v. United States*,
    423 F.3d 1326 (Fed. Cir. 2005)................................................................... 16, 25

*BASF Corp. v. United States*,
    482 F.3d 1324 (Fed. Cir. 2007)........................................................................... 15

*BenQ Am. Corp. v. United States*,
    646 F.3d 1371 (Fed. Cir. 2011)........................................................................... 17

*Carl Zeiss, Inc. v. United States*,
    195 F.3d 1375 (Fed. Cir. 1999)........................................................................... 16

*Degussa Corp. v. United States*,
    508 F.3d 1044 (Fed. Cir. 2007)........................................................... 16, 18, 19

*Essex Mfg., Inc. v. United* States,
    30 CIT 1 (2006)................................................................................................. 15

*Faus Group, Inc. v. United States*,
    581 F.3d 1369 (Fed. Cir. 2009)........................................................................... 15

*Len-Ron Mfg Co., Inc. v. United States*,
    334 F.3d 1304 ( Fed. Cir. 2003).......................................................................... 17

*Lerner New York, Inc. v. United States*,
    908 F. Supp. 2d 1313 (Ct. Int'l Trade 2013).............................................. 15, 16

*Lynteq, Inc. v. United States*,
    976 F.2d 693 (Fed. Cir. 1992)........................................................................... 16

*Mita Copystar Am. v. United States*,
    21 F.3d 1079 (Fed. Cir. 1994)........................................................................... 16

*Motorola, Inc. v. United States*,
    436 F.3d 1357 (Fed. Cir. 2006)........................................................................... 16

*Orlando Food Corp. v. United States*,
    140 F.3d 1437 (Fed. Cir. 1998)........................................................................... 15

*Rollerblade, Inc. v. United States*,
    282 F.3d 1349 (Fed. Cir. 2002)........................................................................... 28

*R.T. Foods, Inc. v. United States*,
    757 F.3d 1349 (Fed. Cir. 2014)................................................................... 28, 29

*Texas Apparel Co. v. United States*,
  698 F. Supp. 932 (Ct. Int'l Trade 1988)
  *aff'd* 883 F.2d 66 (Fed. Cir. 1989)
  *cert denied* 493 US 1024 (1990) ....................................................... 15

*The Container Store v. United States*,
  864 F.3d 1326 (Fed. Cir. 2017) ....................................................... 16

*The Mead Corporation v. United States*,
  283 F.3d 1342 (Fed. Cir. 2002) ................................................*passim*

*Totes, Inc. v. United States*,
  69 F.3d 495 (Fed. Cir. 1995) ....................................................... 25

*Warner-Lambert Co. v. United States*,
  407 F.3d 1207 (Fed. Cir. 2005) ................................................ 16, 17

*Well Luck Co., Inc. v. United States*,
  887 F.3d 1106 (Fed. Cir. 2018) ....................................................... 28

## **Harmonized Tariff Schedule of the United States**

General Rules of Interpretation 1 ..................................................... 16, 20, 25

General Rules of Interpretation 3 ..................................................... 19, 29

General Rules of Interpretation 6 ..................................................... 16

Chapter 48

  Heading 4820 ........................................................................*passim*

    Subheading 4820.10.20 ......................................................... 23, 27

    Subheading 4820.10.40 ......................................................*passim*

Chapter 49

  Heading 4910 ........................................................................*passim*

    Subheading 4910.00.20 ......................................................*passim*

Chapter 99

  Heading 9903

    Subheading 9903.88.03 ......................................................... 2, 13

## **Statutes**

19 U.S.C. § 2411 ....................................................................... 2, 13

**<u>Rules</u>**

USCIT Rule 56 .................................................................................................................. 1, 14, 26

**<u>Other Authority</u>**

EN 48.20 ..................................................................................................................... 26

EN 49.10 ..................................................................................................................... 19

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

| | | |
|---|---|---|
| BLUE SKY THE COLOR OF IMAGINATION, | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00624 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS-MOTION
FOR SUMMARY JUDGMENT**

Defendant, the United States (Government), respectfully submits this memorandum of

law in opposition to the motion for summary judgment filed by plaintiff, Blue Sky The Color Of

Imagination (Blue Sky or plaintiff), and in support of our cross-motion for summary judgment,

pursuant to Rule 56 of the Rules of the United States Court of International Trade (USCIT).

## <u>INTRODUCTION</u>

This case involves the classification of a single entry of merchandise entered by Blue Sky

through the Port of Los Angeles on December 1, 2020.  The merchandise consists of ten different

items which fall into three broad categories: (1) desk pads, (2) monthly planners, and (3)

weekly/monthly planners.  The parties have agreed to the classification of six items which

consist of the desk pads and monthly planners, the features of which, contrary to plaintiff's

contention, differ from those that make up the weekly/monthly planners.  Therefore, the only

issue that remains is the classification of four items described as weekly/monthly planners.

Plaintiff entered the weekly/monthly planners at issue under subheading 4910.00.20,

Harmonized Tariff Schedule of the United States (HTSUS), which covers "[c]alendars of any

kind," a duty free provision.  At liquidation, U.S. Customs and Border Protection (Customs or

CBP) classified all three categories of merchandise in subheading 4820.10.40, HTSUS, which

covers, in relevant part, "[r]egisters, account books, notebooks, order books, receipt books, letter

pads, memorandum pads, diaries and similar articles . . . [r]egisters, account books, notebooks,

order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . .

[o]ther," a duty-free provision.  The merchandise was also concurrently classified under

subheading 9903.88.03, HTSUS, at a duty rate of 25 percent *ad valorem* pursuant to Section 301

of the Trade Act of 1974 (Pub. L. 93-618, 19 U.S.C. § 2411);  Plaintiff's claimed classification is

no longer subject to Section 301 duties.

The weekly/monthly planners each contain some printed pages that would be considered

calendar pages – *i.e.*, pages that show a system or chart representing the days, weeks or months

of the year – however, the vast majority of the pages in each of the planners are *not* calendar

pages and the item as a whole is not a calendar.  More than two-thirds of the pages in the

weekly/monthly planners consist of weekly view pages covering each week of the year, with

separate lined sections for each day of the week and a separate section for notes and "to do" lists.

Indeed, the printed calendar pages do not define the planners.  Instead, the undisputed facts show

that the weekly/monthly planners share the common characteristics and unifying purpose of the

items in heading 4820, HTSUS – stationery products, the common purpose of which is to

provide space for the writing and recordation of various information – and are, therefore,

properly classified in subheading 4820.10.40, HTSUS.

## STATEMENT OF FACTS

### A.  The Merchandise At Issue

This case covers ten different items imported by Blue Sky, which fall generally into three categories of merchandise: four weekly/monthly planners, Def. Exs. A-D (Weekly/Monthly Planners), two monthly planners, Def. Exs. E-F (Monthly Planners), and four desk pads, Def. Exs. G-J (Desk Pads).[1]  *See also* Samples, Court File.  Because the parties have agreed that the monthly planners and desk pads are classified in subheading 4910.00.20 as "calendars," this motion is limited to the classification of the weekly/monthly planners.  *See* Pl. Ex. 6 (email); Def. Exs. A-D (Weekly/Monthly Planners).  Plaintiff refers to all of the weekly/monthly planners at issue as legacy planners, meaning that they are the same style year after year, with the year identified in the last two digits of the item number – *e.g.,* 110211-***21***.  Def. Ex. K (Deposition of Elaine Peterson (Peterson Dep.)) at 34:10-35:9; 122:1-14.

The four weekly/monthly planners at issue have similar characteristics.  *See* Def. Exs. A-D (Weekly/Monthly Planners).  In addition to the samples filed with the Court, plaintiff provided, in discovery, the production file for each item, displaying each page of the item as well

---

[1] Def. Ex. A (110211-21 W/M Planner)
Def. Ex. B  (110394-21 W/M Planner)
Def. Ex. C (111288-21 W/M Planner)
Def. Ex. D (111291-21 W/M Planner)
Def. Ex. E (101605-21 Monthly Planner)
Def. Ex. F (110395-21 Monthly Planner)
Def. Ex. G (111294-21 Desk Pad)
Def. Ex. H (117866-21 Desk Pad)
Def. Ex. I (117891-21 Desk Pad)
Def. Ex. J (110215-21 Desk Pad)

as the packaging material.  Def. Ex. K (Peterson Dep.) at 31:17-32:2.  Each of the production

files are attached hereto.  *See* Def. Exs. A-J. [2]

### 1.  Baccara Weekly/Monthly Planner (Item No. 110211-21)

The first of the weekly/monthly planners at issue, Def. Ex. A (110211-21 W/M Planner),

is identified on plaintiff's purchase order as "Planner BS Baccara Dark CYO 8.5 x 11 RY21

Wkly/Mthly Safety Wirebound," Def. Ex. L (Purchase Order), and on plaintiff's marketing

materials as "Weekly/Monthly CYO Planner." Pl. Ex. 13 (Marketing) at 1.  The description of

the merchandise on the purchase orders is identical to the description on Blue Sky's internal

system.  Def. Ex. K (Peterson Dep.) at 111:18-112:11.  The size of the item is 8.5 x 11 inches.

Pl. Ex. 13 (Marketing) at 1.

The first page of the production file for this item, Def. Ex. A (110211-21 W/M Planner)

at 240, shows the packaging material, referencing a "Tabbed Planner Jan 2021 – Dec 2021" and

highlights several other sections, including "6 Bonus Months, Clear Pocket Cover, Storage

Pocket, Weekly + Monthly Calendars, Reference Pages, Contacts, Notes." *Id.* at 240; Def. Ex. K

(Peterson Dep.) at 32:4-17.  The packaging includes the letters "W/M" in a blue circle and the

words "Weekly + Monthly" to identify the type of planner. *Id.*  The title page similarly calls the

item "Weekly/Monthly Planner."  Def. Ex. A (110211-21 W/M Planner) at 243; Def. Ex. K

(Peterson Dep.) at 33:14-16.  In addition, the planner includes a yearly overview page, showing

monthly calendars for a two-year period, Def. Ex. A (110211-21 W/M Planner) at 244, a page

---

[2] We include the production file for the items for which classification is agreed to by the parties
to highlight the stark differences between the categories of desk pads and monthly planners from
weekly/monthly planners.  For example, the desk pads, *see e.g.*, Def. Ex. G (111294-21 Desk
Pad), contains only a cover and 12 pages, each of which constitutes a monthly grid page.  The
monthly planner, *see e.g.,* Def. Ex. E (101625-21 Monthly Planner), contain just over 50 pages,
36 of which are calendar grids.

that allows the owner to write its name, address and yearly goals, *id.* at 245, a full lined page to include the name and details for contacts, *id.* at 246, and a page to identify important dates for each month.  *Id.* at 247.

The next 12 pages are what Blue Sky refers to on the cover page as "6 Bonus Months," which are two-page monthly view pages for each of the six months prior to the date range covered by the planner at issue, here July-December of 2020.  *Id.* at 248-259; Def. Ex. K (Peterson Dep.) at 37:23-38:17.  Each of the monthly view pages includes a separate "notes" section with a preview of the two subsequent months.  Def. Ex. K (Peterson Dep.) at 37:23-38:17; *see* also *e.g.*. Def. Ex. A (110211-21 W/M Planner) at 249.

Following the bonus months, the planner includes tabbed sections for each month of the year in question, 2021, followed by a two-page monthly view of each month, *see e.g.*, Def. Ex. A (110211-21 W/M Planner) at 260-261; Def. Ex. K (Peterson Dep.) at 38:23-39:4, and then two-page weekly views covering each week of the month.  Def. Ex. K (Peterson Dep.) at 40:2-41:17; *See e.g.*, Def. Ex. A (110211-21 W/M Planner) at 262-271.  Each two-page weekly view is broken down by days of the week, with lined sections for each day, as well as smaller lined sections for "weekly to do" and "notes."  *Id.*  Each day of the week on a weekly view page has eight lines of writing space that run across the entire length of the page.  *See e.g.,* Def. Ex. A (110211-21 W/M Planner) at 262-271.  106 of the 153 pages inside the planner (excluding the cover pages and packaging) – more than 2/3 of the pages – are weekly view pages, an example of which is shown below.  Def. Ex. A (110211-21 W/M Planner).



*Id.* at 262-63.  According to Blue Sky, use of a notes section on a weekly view page is "flexible" and an individual can include "any note that somebody wanted to write . . . in that section."  Def. Ex. K (Peterson Dep.) at 50:17-21.

Following the weekly view pages, the planner has five fully lined notes pages, Def. Ex. A (110211-21 W/M Planner) at 390-394, a page listing all holidays, and a page with a map of the United States.  *Id.* at 395-96.  The same basic sections exist in all of the items at issue.  *See* Def. Ex. K (Peterson Dep.) at 45:12-15.

### 2.  <u>Joselyn Weekly/Monthly Planner (Item No. 110394-21)</u>

The second of the weekly/monthly planners, Def. Ex. B (110394-21 W/M Planner), is identified on the purchase order as "Planner BS Joselyn Frosted PP 8.5x11 RY21 Wkly/Mthly Safety Wirebound," Def. Ex. L (Purchase Order) and on plaintiff's marketing materials as "Weekly/Monthly Planner."  Pl. Ex. 13 (Marketing) at 1.  The size of the item is 8.5 x 11 inches. *Id.*  The packaging material identifies the item as a "Tabbed Planner," and lists several of its

features, including bonus months, storage pocket, weekly and monthly calendars, reference

pages, as well as contacts and notes pages.  Def. Ex. B (110394-21 W/M Planner) at 410.  The

planner includes a yearly overview page with monthly calendars for a two-year period, *id.* at 414,

a page with the owner's information and lined space for yearly goals, *id.* at 415, a contacts page,

*id.* at 416, and a page to list important dates for each month.  *Id.* at 417.

The next section includes the six bonus months, each of which includes a two-page

monthly view for the six months prior to the date range covered by the planner.  *See id.* at 418-

429.  Each of the monthly view pages includes a separate "notes" section with a preview of the

next two months.  *See id.* at 419.

Following the bonus months, the item includes tabbed sections covering each month in

the year in question.  *Id.* at 430-459.  Following each tab, the planner can be opened to a two-

page monthly view, *see e.g., id.* at 430-431, and a two-page weekly view covering each week of

the month.  *See e.g., id*. at 432-441.  Weekly view pages are broken down by day and include

"weekly to do" and "notes sections."  *Id.*  Each day of the week on a weekly view page has nine

lines of writing space running across the length of the page.  *Id.*  Again, more than 2/3 of the

pages inside the planner – 106 of 152 pages – are weekly view pages.  Def. Ex. B (110394-21

W/M Planner).

Following the weekly view section, the planner has five fully lined notes pages, *id.* at

560-64; Def. Ex. K (Peterson Dep.) at 51:12-17, and a single page listing holidays over the

course of a four-year period.  Def. Ex. B (110394-21 W/M Planner) at 565.

### 3.  Classic Red Weekly/Monthly Planner (Item No. 111288-21)

The third of the weekly/monthly planners, Def. Ex. C (110288-21 W/M Planner), is

identified on the purchase order as "Planner BS Classic Red PP 8.5x11 RY21 Wkly/Mthly

Safety Wirebound," Def. Ex. L (Purchase Order), and on plaintiff's marketing materials as "Weekly/Monthly Planner."  Pl. Ex. 13 (Marketing) at 2.  The size of the item is 8.5 x 11 inches. *Id.*  The packaging material identifies the item as a "Tabbed Planner," and lists several of its features, bonus months, weekly and monthly calendars, reference pages, and contacts and notes pages.  Def. Ex. C (111288-21 W/M Planner) at 624.  Like the other planners, this planner includes a yearly overview page with monthly calendars for a two-year period, *id.* at 626, a page with the owner's information and lined space for yearly goals, *id.* at 627, a contacts page, *id.* at 628, and a page to list important dates for each month.  *Id.* at 629.

The next section includes the six bonus months (as described previously).  *See id.* at 630-641.  Each of the monthly view pages includes a separate "notes" section which runs down the length of one page.  *See e.g.. id.* at 631.  Following the bonus months, the item includes tabbed sections covering each month of the year covered by the planner.  *Id.* at 642-771.  Following the initial tab, the planner can be opened to a two-page monthly view of each month, *see e.g.*, *id.* at 642-643, and a two-page view covering each week of the month.  *See id*. at 644-653.  Weekly view pages are broken down by day, with 11 lines of writing space for each day of the week, which runs across the entire length of the page.  *Id.*  Again, more than 2/3 of the pages inside the planner – 106 of 153 pages – are weekly view pages.  Def. Ex. C (111288-21 W/M Planner).

Following the weekly view section, the planner has five fully lined notes pages, *id.* at 772-76, a single page listing holidays over the course of a four-year period, *id.* at 777, and a map of the United States, identifying states and capitals.  *Id.* at 778.

### 4.  Classic Red Weekly/Monthly Planner (Item No. 111291-21)

The final of the weekly/monthly planners, Def. Ex. D (111291-21 W/M Planner) is identified on the purchase order as "Planner BS Classic Red PP 5x8 RY21 Wkly/Mthly Safety

Wirebound" Def. Ex. L (Purchase Order), and on plaintiff's marketing materials as "Weekly/Monthly Planner."  Pl. Ex. 13 (Marketing) at 2.  The size of the item is 5 x 8 inches. *Id.*  The packaging material identifies the item as a "Tabbed Planner," and highlights some features, including bonus months, weekly and monthly calendars, reference pages, as well as contacts and notes pages.  Def. Ex. D (111291-21 W/M Planner) at 779.  The planner includes a yearly overview page with monthly calendars for a two-year period, *id.* at 781, a page with the owner's information and lined space for yearly goals, *id.* at 782, a contacts page, *id.* at 783, and a page to list important dates for each month.  *Id.* at 784.

The next section includes the six bonus months.  *See id.* at 785-796.  Each of the monthly view pages includes a separate "notes" section which runs down the length of one page.  *See e.g.*. *id.* at 786.  Following the bonus months, the item includes tabbed sections covering each month of the year covered by the planner.  *Id.* at 796-926.  Following the initial tab, the planner can be opened to a two-page monthly view of each month, *see e.g., id*. at 797-798, and a two-page weekly view page covering each week of the month.  *See e.g., id*. at 799-808.  Weekly view pages are broken down by day, each day of the weekdays on a weekly view page has ten lines of writing space that run across the entire length of the page.  *Id.*  Again, more than 2/3 of the pages inside the planner – 106 of 153 pages – are weekly view pages.  Def. Ex. D (111291-21 W/M Planner).

Following the weekly view section, the planner has five fully lined notes pages, *id.* at 927-931, a single page listing holidays over the course of a four-year period, *id.* at 932, and a map of the United States, identifying states and capitals.  *Id.* at 933.

**B.  Sale And Marketing Of The Planners**

The merchandise at issue is "marketed, advertised, depicted, merchandised, and sold in 2021 nationwide in U.S. retail stores and websites at Target, Walmart, Staples, Office Depot, Walgreens, CVS, and FedEx Office, and websites of Amazon.com and BlueSky.com."  Def. Ex. M (Interrogatories) at 7; Def. Ex. K (Peterson Dep.) at 85:4-21; Def. Ex. N (Website/Retail Partners).  With the exception of BlueSky.com, these entities are considered Blue Sky's customers or retail partners, with which Blue Sky has contractual arrangements.  Def. Ex. K (Peterson Dep.) at 86:20-87:15.

Individuals at Blue Sky are assigned to work with specific customers.  Def. Ex. O (Deposition of Warren Vidovich (Vidovich Dep.)) at 26:5-24.  With most customers, Blue Sky makes a presentation showing a number of items, and that customer will decide which items and/or which variation of those items it wants to buy.  *Id.* at 17:8-18:17, 31:4-15.  Blue Sky also has a number of legacy items, which remain predominately the same year after year, such as the ones at issue.  Def. Ex. K (Peterson Dep.) at 36:6-35:9, 122:1-13.

Once items are selected, Blue Sky provides its customer with technical data about an item (dimensions, weight, etc.), as well as marketing language for the item.  Def. Ex. O (Vidovich Dep.) at 21:14-22:24, 28:20-29:1.  The technical data and marketing language are provided to Blue Sky's customers to use when marketing the product online.  *Id.*

For example, both the marketing language and product specifications on the Staples website with respect to item no. 110394 were provided by Blue Sky.  Def. Ex. O (Vidovich Dep.) at 27:10-24; Def. Ex. P (Staples Website/Item No. 110394).  The Staples website describes several sections of this legacy planner (most of which are relevant to all four weekly/monthly planners at issue), such as "weekly and monthly planning calendars, dedicated notes pages, and a

storage pocket to secure papers and receipts."  Def. Ex. P (Staples Website/Item No. 110394).  In addition, the description on the Staples website featured "two-page weekly and monthly calendar layouts [that] offer *extra writing space* . . . two-sided storage pocket, reference calendars, and extra notes pages."  *Id.* (emphasis added).  The website further noted that the item has "everything you need to organize tasks and be more productive."  *Id.*  All of this information was provided by Blue Sky.  Def. Ex. O (Vidovich Dep.) at 27:10-24; *see also* Def. Ex. Q (Staples Website/Item No. 111291) (descriptive information for item no. 111291, provided by Blue Sky,[3] including "lined weekly and monthly views for organized writing, extra notes pages, and reference calendars").

Similarly, in describing item no. 110211 (another legacy item), Blue Sky provided the following description for use by Amazon.com:

- January 2022-December 2022 chic day planner with 12 months of monthly and weekly pages for easy year-round planning; . . .
- Monthly view pages contain previous and next month reference calendars for long-term planning, and a notes section for important projects; . . .
- Weekly view pages offer ample lined writing space for more detailed planning, allowing you to keep track of your appointments, reminders, ideas and to-do lists every day of the week
- Yearly calendar planner includes a poly storage pocket, a convenient list of holidays, reference calendars, contacts pages and extra notes pages to accommodate your scheduling needs

Def. Ex. R (Amazon.com/Item No. 110211);[4] Def. Ex. O (Vidovich Dep.) at 39:8-40:23.  And, similar language was included on Walmart's website.  *See* Def. Ex. S (Walmart /Item No.

---

[3] Pl. Ex. O (Vidovich Dep.) at 41:7-19.
[4] Blue Sky testified that there is no reason to believe that the 2022 model in the marketing material is different from the imported 2021 model in any material way.  Def. Ex. K (Peterson Dep.) at 144:12-18.

110211) (identifying "Product details" to include "two-page weekly and monthly calendar layouts offer extra writing space.")

The weekly/monthly planners are more popular than other formats of Blue Sky's planners, such as daily planners or monthly planners. Def. Ex. O (Vidovich Dep.) at 43:23-45:1. The weekly/monthly planners are not as large as the daily, but as stated by Blue Sky, they provide more ample lined space for a person to write down what they are doing on a particular day. *Id.*

As for in-store marketing, representatives from Blue Sky indicated that it is the cover page or the packaging – which identifies bonus months, storage pocket, weekly and monthly views, reference pages, contacts and notes – that provides most of the information to the consumer in terms of what the product is. Def. Ex. O (Vidovich Dep.) at 55:2-57:17. For all of the items at issue, the packaging and cover identify the item as a "Tabbed Planner." *See* Def. Exs. A-D (Weekly/Monthly Planners). Blue Sky recently started referring to its merchandise as "planning calendar" and that change was made purportedly to clarify what the product is amid the Customs classification issue. Def. Ex. O (Vidovich Dep.) at 61:13-22; Def. Ex. K (Peterson Dep.) at 101:20-102:7, 116:21-117:2.[5]

With respect to the store displays, it varies by store. Indeed, some stores group the planners by collections (*e.g.*, the Bacarra collection items (Pl. Ex. 13 (Marketing))), while other stores group planners by the specific format (*e.g.*, weekly, monthly, daily). Def. Ex. O

---

[5] The purchase orders at issue here refer to the items as "planners" Def. Ex. K (Purchase Order), however, the invoice refers to the products as planning calendars, Pl. Ex. 3 (Entry Documents) at 2, likely the result of Blue Sky notifying its suppliers of its own recent name change. Def. Ex. K (Peterson Dep.) at 114:15-115:1. According to Blue Sky, it is typical for the purchaser to edit the invoice used for making entry. *Id.* at 115:7-116:3. As recently as 2019, Blue Sky invoices for the merchandise at issue described the merchandise as "planner" not "planning calendar." *Id.* at 120:13-123:17.

(Vidovich Dep.) at 57:18-59:5.  The name of the store aisle can also differ.  In one Staples store,

for example, the planners at issue were included in an aisle for "briefcases & planners,"

"planners," or "fashion planners."  Pl. Ex. 13 (Marketing/Pictures) at 3-4; Def. Ex. K (Peterson

Dep.) at 125:17-128:19.  This aisle had a section for "weekly planners" and then separately for

"daily and monthly planners."  *Id.*  At a second Staples store, the weekly/monthly planners

appeared to be in an aisle marked "dated organizers."  Pl. Ex. 13 (Marketing/Pictures) at 6; Def.

Ex. K (Peterson Dep.) at 132:24-133:5.  At Target stores, the planners were in an aisle marked

"school and office," Pl. Ex. 13 (Marketing/Pictures) at 7-8, and separately in an aisle marked

"planners."  *Id.* at 8.  In at least one Target store, the planners were in the same aisles as

notebooks.  *Id.*; Def. Ex. K (Peterson Dep.) at 136:25-138:10.  In the Walmart stores depicted in

plaintiff's pictures, the "planners" were included in an aisle marked "stationery," or "planners."

Pl. Ex. 13 (Marketing/Pictures) at 9-11.

## QUESTION PRESENTED

The question before the Court is whether the weekly/monthly planners are correctly

classified in subheading 4820.10.40, HTSUS, which covers, in relevant part, "[r]egisters, account

books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar

articles . . .  [r]egisters, account books, notebooks, order books, receipt books, letter pads,

memorandum pads, diaries and similar articles . . . [o]ther," or whether classification is more

appropriate under subheading 4910.00.20, HTSUS, which covers "[c]alendars of any kind."

Both provisions are duty-free.  However, merchandise classified in subheading 4820.10.40,

HTSUS, is concurrently classified under subheading 9903.88.03, HTSUS, at a duty rate of 25

percent *ad valorem* pursuant to Section 301 of the Trade Act of 1974 (Pub. L. 93-618, 19 U.S.C.

§ 2411); merchandise classified under subheading 4910.00.20, HTSUS, is no longer subject to Section 301 duties.

## SUMMARY OF ARGUMENT

The weekly/monthly planners do not appropriately fall within subheading 4910.00.20, HTSUS, as "[c]alendars of any kind."  To be classified in this provision, the merchandise must satisfy the common meaning of the statutory term "calendar," which covers a system or chart representing the days, weeks or months of the year.  Although some pages of the planners are calendar pages, those printed pages must also provide the essential character of the items according to the applicable Explanatory Note.  However, the planners, as a whole, are more than a chart of the days, weeks or months of the year.  Indeed, more than two-thirds of the planners' pages are weekly view pages with ample space for writing, and still other pages are available as extra space to write notes, ideas, lists and generally plan one's time.  As such, the planners at issue do not satisfy the common meaning of the term "calendars."

Instead, the planners should be classified as "similar articles" to those listed in subheading heading 4820.10.40, HTSUS, which provides for "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . .  [r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . [o]ther."  The items listed in the heading and subheading are items of stationery used for the recordation and organization of not just future appointments but a variety of different information, and likewise the planners at issue contain pages for that purpose.  Accordingly, the planners are properly classified as items similar to those listed in the provision.

## ARGUMENT

## I.   SUMMARY JUDGMENT FOR THE GOVERNMENT IS WARRANTED

The Court reviews classification decisions by Customs *de novo* through a two-step

analysis. *Faus Group, Inc. v. United States*, 581 F.3d 1369, 1371 (Fed. Cir. 2009). First, the

Court must determine "the proper meaning of the relevant tariff provisions" – a question of law.

*Id.* (citing *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998)). Second,

the Court must determine "whether the merchandise at issue falls within a particular tariff

provision as construed" – a question of fact. *Id.* at 1371-72.

"This court may resolve a classification issue by means of summary judgment . . . 'if the

pleadings, depositions, answer to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" *Essex Mfg.,*

*Inc. v. United* States, 30 CIT 1, 3 (2006) (quoting USCIT Rule 56(c)). That is, the Court must

determine whether there are any factual disputes that are material to the resolution of the action.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *Texas Apparel Co. v. United*

*States*, 698 F. Supp. 932, 934 (Ct. Int'l Trade 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert.*

*denied*, 493 U.S. 1024 (1990).

Because there are no material factual issues in dispute, this case is ripe for summary

judgment.

## II.   THE LEGAL FRAMEWORK

In construing the tariff statute, the Court applies the General Rules of Interpretation

(GRIs), which are applied in numerical order, *BASF Corp. v. United States*, 482 F.3d 1324,

1325-26 (Fed. Cir. 2007), and, if applicable, the Additional U.S. Rules of Interpretation (ARIs).

*Id.; Lerner New York, Inc. v. United States*, 908 F. Supp. 2d 1313, 1318 (Ct. Int'l Trade 2013).

15

GRI 1 provides that "classification [under a particular heading] shall be determined according to the terms of the headings and any relative section or chapter notes . . . ."  The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law.  *Aves. in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (internal quotation marks omitted).  GRI 6 provides that "the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes . . . ."

In addition, courts have recognized that the Explanatory Notes (ENs), although not binding law, are intended to clarify the scope of tariff provisions, are instructive, and provide useful interpretive guidance for determining the scope of tariff provisions.  *See, e.g. Motorola, Inc. v. United States*, 436 F.3d 1357, 1361 (Fed. Cir. 2006); *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994); *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992).  The ENs are the official interpretation of the Harmonized Commodity Description and Coding System (Harmonized Tariff System) at the international level.  The Harmonized Tariff System is the international coding system that formed the basis for the HTSUS, which the United States and its trading partners adopted in its entirety up to the six-digit level.  *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1378 n.1 (Fed. Cir. 1999).  Thus, the ENs are "generally indicative of the proper interpretation of a tariff provision."  *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007); *see also Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005).  If, however, the language of an EN conflicts with the language of the related tariff provision, the statutory provision prevails.  *See The Container Store v. United States*, 864 F.3d 1326, 1331-32 (Fed. Cir. 2017); s*ee also Airflow Technologies, Inc. v. United States*, 524 F.3d 1287, 1293 (Fed. Cir. 2008).

### III.    THE SUBJECT MERCHANDISE IS NOT CORRECTLY CLASSIFIED UNDER SUBHEADING 4910.00.20, HTSUS

Blue Sky claims that the weekly/monthly planners are appropriately classified in subheading 4910.00.20 as "Calendars of any kind."  Pl. Br. at 18.  We disagree.  Plaintiff's expansive interpretation of the term "calendar," covering any "dated book with pages for weeks, months, and year in which you notate future appointments," Pl. Br. at 21, or "a dated book with space to make notations about future arrangements," Pl. Br. at 16, relies primarily on a portion of one definition, which is inconsistent with the plain language of the statute, numerous other dictionary definitions and the Explanatory Notes.  Indeed, the merchandise does not satisfy the common meaning of the term calendar – a system or chart representing the days, weeks or months of the year – and classification in heading 4910 is incorrect.

The term calendar is not defined in the HTSUS.  Where, as here, relevant terms are undefined in the tariff statute, they "are [to be] construed according to their common [and] commercial meaning[]."  *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011) (internal quotation marks omitted).  To ascertain the "common and commercial meaning[]" of a particular tariff term the Court "may rely on its own understanding of the term as well as upon lexicographic and scientific authorities."  *Len-Ron Mfg. Co., Inc.  v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003).  That is, the "court may consult dictionaries, scientific authorities, and other reliable information sources."  *Warner-Lambert Co.*,407 F.3d at 1209.

The dictionary definitions of calendar are consistent.  According to *Webster's New Collegiate Dictionary*, a calendar is defined as "1. a system for fixing the beginning, length and divisions of the civil year and arranging days and longer divisions of time (as weeks and months) in a definite order . . . 2: a tabular register of days according to a system usu. covering one year and referring the days of each month to the days of the week . . ."  Def. Ex. T (*Webster's New*

*Collegiate Dictionary* (1979)) at 155.  *Webster's New World Dictionary* similarly defines calendar as "1 a system of determining the beginning, length, and divisions of a year and for arranging the year into days, weeks, and months 2 a table or chart that shows such an arrangement, usually for a single year."  Def. Ex. U (*Webster's New World Dictionary, Third College Edition* (1988)) at 198.  The *Collins Dictionary* provides an almost identical definition, Def. Ex. V (*Collins Dictionary*) at 5, defining calendar as "1. a system of determining the beginning, length and division of a year and for arranging the year into days, weeks and months 2. a table, chart, register, etc. that shows such an arrangement, usually for a single year . . .  3. a list or schedule, as of pending court cases, bills coming before a legislature, planned social events. etc.").

Similarly, the Black's Law Dictionary defines calendar as "1. A systematized ordering of time into years, months, weeks, and days . . . ."  Def. Ex. W (Black's Law Dictionary (7th Ed. 1999)) at 195.  And, the *American College Dictionary* defines calendar as "1. any of various systems of reckoning time, esp. with reference to the beginning, length, and divisions of a year . . . . 2. a tabular arrangement of the days of each month and week in a year. 3. a list or register, esp. one arranged chronologically, as a list of the cases to be tried in a court."  Def. Ex. X (*American College Dictionary* (1962)) at 169.  A common thread throughout these definitions is that the term "calendar," is a system or chart representing the days, weeks or months of the year.

This common meaning of calendar is consistent with the language set forth in the Explanatory Notes, which as a general matter, are "generally indicative of the proper interpretation of a tariff provision."  *Degussa Corp.*, 508 F.3d at 1047.  While Blue Sky argues that the Explanatory Notes should be disregarded "because the Government argues they conflict"

18

with the language of heading 4910 (Pl. Br. at 18), Blue Sky is incorrect.  To the contrary, we

believe that the relevant Explanatory Note is consistent with, and further informs the meaning of

the statutory term, calendar.  Explanatory Note, 49.10, provides in relevant part:

> This heading relates to calendars of any kind whether they are printed on paper, paperboard, woven fabric or any other material **provided** that the <u>printing</u> gives the article its essential character. They may contain, in addition to the <u>normal sequence of dates</u>, <u>days of the week</u>, etc., various other items of information, such as notes of important events, festivals, astronomical and other data, verses and proverbs.  They may also incorporate pictorial or advertising matter.  However, publications sometimes improperly called calendars which, <u>although dated</u>, are published essentially to give information concerning public or private events, etc., are classified in **heading 49.01** (unless falling in **heading 49.11** as publicity matter.)
>
> . . .
>
> This heading, however, **does not cover** articles whose essential character is not determined by the presence of a calendar.
>
> This heading also **excludes:**
>
> (a) Memorandum pads incorporating calendars and diaries (including so-called engagement calendars) (**heading 48.20**).

EN 49.10 (bold in original and underline added).  Like the dictionary definitions, the EN

explains that a calendar includes the "normal sequence of dates, days of the week, etc." *Id.*  The

EN further explains that the "printing" on the item, which reflects that "sequence of dates" and

"days of the week" (and which may include "notes of events, festivals, astronomical"

information) must "give[] the article its essential character."  EN 49.10.[6]  And, that simply being

---

[6] The "essential character" analysis identified herein is distinct from that applied under GRI 3(b); indeed, the Government does not contend that the merchandise is classifiable in multiple headings.  In this instance, the classification analysis is under GRI 1, but, under the terms of the EN, the essential character, or true identity, of the product is also considered.

"dated" does not mean an item is a calendar.  This further elaborates on, but is consistent with, the plain meaning of the term calendar.

Based on this analysis, it is apparent that the weekly/monthly planners do not, as a whole, satisfy the common meaning of the term calendar.  The name for the merchandise at issue, as reflected in the product and packaging material – a "Tabbed Planner" – is telling.  *See* Def. Exs. A-D (Weekly/Monthly planners).  Moreover, while the items certainly include some calendar pages – *i.e.,* pages that include a system or chart showing the days, weeks or months of the year – those pages are minimal, and the printing on those pages does not impart the essential character of the product.  More than 2/3 of the planner pages – 106 of the approximately 150 pages (excluding the packaging and cover) – are weekly view pages, which include amply lined portions of the page, broken down by the days of the week, for each month of the year.  *See e.g.*, Def. Ex. A (110211-21 W/M Planner), at 263.  For each day of the week on a weekly view page, the planners include lined sections (each with 8-11 blank lines) for notes.  *Id.*  In addition, the planners contain an additional five pages for notes, one contacts page, a yearly goals page, and a page to list important dates each month as well as a page identifying holidays, none of which can be considered calendar pages.  *See e.g., id.* at 245-47, 390-96.  In addition, some of the planners contain a poly storage pocket.  *See* Def. Ex. A (110211-21 W/M Planner).  Only 37 of the pages can be considered calendar pages; this includes the 12 bonus monthly views for 2020, 24 monthly view pages for 2021 and the yearly overview page.  *See e.g., id.* at 244, 248-59.

The marketing language provided by Blue Sky to its customers highlights these different features and supports the conclusion that the items at issue are not calendars.  Indeed, contrary to plaintiff's contention, Pl. Br. at 18, the Government does not admit—nor can it – that the merchandise is "marketed and used as calendars."  Indeed, that statement is belied by plaintiff's

packaging, *see e.g.,* Def. Ex. A (110211-21 W/M Planner) at 240, its marketing document, Pl.

Ex. 13 (Marketing) at 1-2, and the language Blue Sky provided to its customers for marketing

purposes.

      For example, one iteration of Blue Sky's marketing language, provided by Blue Sky to

Amazon.com, states:

- January 2022-December 2022 chic day planner with 12 months of monthly and weekly pages for easy year-round planning; . . .
- Monthly view pages contain previous and next month reference calendars for long-term planning, and a notes section for important projects; . . .
- Weekly view pages offer ample lined writing space for more detailed planning, allowing you to keep track of your appointments, reminders, ideas and to-do lists every day of the week
- Yearly calendar planner includes a poly storage pocket, a convenient list of holidays, reference calendars, contacts pages and extra notes pages to accommodate your scheduling needs

Def. Ex. R (Amazon.com/Item No. 110211); Def. Ex. O (Vidovich Dep.) at 39:8-40:23.  While

an importer's marketing does not dictate classification, it is certainly relevant.  *The Mead Corp.*

*v. United States*, 283 F.3d 1342, 1349 (Fed. Cir. 2002).  Plainly, given the physical sample, the

name (Tabbed Planner), and the features of the items (ample writing space, notes pages, contacts

pages, poly storage pocket), the essential character of the merchandise – the true nature of the

item – taken as a whole is not the printed calendar pages.  Notably, the EN specifically

identified, as an exclusion to classification in heading 4910, "engagement calendars" – which are

similar items to those at issue here – used for the daily recording of social engagements or other

appointments, Def. Ex. Y (Dictionary.com) at 1.  To be sure, the true nature of the item more

closely resembles an engagement book, and not a calendar, and should therefore be excluded

from classification in heading 4910.

Blue Sky's cited definitions for the term calendar are largely consistent with this analysis. Indeed, Blue Sky cites to the *Concise Oxford American Dictionary*, which defines the term calendar as "a chart or series of pages showing the days, weeks, and months of a particular year, or giving particular seasonal information" or "a datebook."  Pl. Ex. 11 (*Concise Oxford American Dictionary*) at 3; Pl. Br. at 14.  Moreover, Blue Sky cites to the *Cambridge English Dictionary*, which defines calendar, in the first instance, as a "printed table showing the arrangement of the days, weeks and months of the year" which is likewise consistent with the analysis of that statutory term identified herein.  Pl. Ex. 10 (*Cambridge English Dictionary*) at 1. Blue Sky noticeably ignores that portion of the definition in its brief.

Blue Sky's analysis of the tariff term – claiming, for example, that a calendar is "a dated book with space to make notations about future arrangements," Pl. Br. at 16, or an item that "contain[s] a series of pages showing the days, weeks, and months of a particular year in which people notate future arrangements," Pl. Br. at 18 – relies on a secondary definition from the *Cambridge English Dictionary*.  Specifically, that source includes, under the definition of calendar, "a book with a separate space or page for each day, in which you write down your future arrangements, meetings, etc."  Pl. Ex. 10 (*Cambridge English Dictionary*) at 1.  However, that broad definition is inconsistent with not only the majority of the dictionary sources, but with the ENs, which specifically exclude the precise items at issue – an engagement calendar or an engagement book.  A single definition of a term which is inconsistent not only with multiple other definitions, but the EN, is not cause to ignore the EN, as Blue Sky suggests.  Pl. Br. at 17-

18. Instead, it provides strong support that the single definition is inconsistent with the intent of tariff.[7]

The Federal Circuit's decision in *The Mead Corporation*, 283 F.3d 1342, is instructive with respect to the proper analysis of the tariff term. That case involved the classification of day planners, with many of the same sections that are at issue here. *Id.* at 1344. Specifically, the items contain "a calendar, a section for daily notes, a section for telephone numbers and addresses, and a notepad. The larger models contain[ed] the features of the basic model with additional items such as daily planner section, plastic ruler, plastic pouch, credit card holder, and computer diskette holder." *Id.* Although the Court only analyzed whether the items were diaries of subheading 4820.10.20, HTSUS, or instead classified in subheading 4820.10.40, HTSUS, for "other," the same subheading at issue here which covers some of the "similar articles" to those listed, the Court noted that "neither party in this case would classify the day planners as calendars," of heading 4910. *Id.* at 1347. The *Mead* court did not consider the calendar provision in its *de novo* analysis, even though the daily planners would likely satisfy the definition of calendar in the *Cambridge English Dictionary* – "a book with a separate space or page for each day, in which you write down your future arrangements, meetings, etc." Pl. Ex. 10

---

[7] Plaintiff states that "Defendant admits the [merchandise at issue] meet[s] the *Cambridge English Dictionary* definition of 'calendar,'" and "the [*Concise*] *Oxford American Dictionary* definition of 'calendar'." Pl. Br. at 14; *see also* Pl. Br. at 21 ("[B]oth parties agree the 2021 [weekly monthly planners] in question meet the commonly understood dictionary definition of a calendar . . ."). In response to plaintiff's question as to whether the items "are a book with pages that ha[ve] space to write down future arrangements, meetings, et cetera" the witness responded "yes, space to write down anything you choose." Pl. Ex. 2 (Deposition of Claudia Garver (Garver Dep.)) at 37:23-38:4. This testimony is hardly an admission either that the *Cambridge English Dictionary* or the *Concise Oxford American Dictionary* definition of the term identifies its common and commercial meaning or that the weekly/monthly planners satisfy that definition. Moreover, the manner in which a party defines a statutory term is irrelevant to the Court's *de novo* legal determination.

(*Cambridge English Dictionary*).  This Court should likewise disregard the overly broad definition offered by Blue Sky here.

Finally, plaintiff's contention that "the Department of Commerce determined the Blue Sky 2021 weekly/monthly planning calendars are classified under Heading 4910" is plainly erroneous.  Pl. Br. at 14.  As a threshold matter, the Department of Commerce does not make classification determinations.  That responsibility rests solely with CBP, and classification decisions, such as the decision here, are appealable to this Court.  The scope determination that Blue Sky refers to neither stated, nor implied, what the proper classification was for the precise merchandise at issue.  *See* Pl. Ex. 12 (Scope Determination).  Instead, the Department of Commerce determined that certain Blue Sky products, including planners, were covered by the exclusion to an antidumping duty order that covered not just calendars but also organizers.  *See id*.  The scope determination is irrelevant to the interpretation of the tariff provision or the classification of the weekly/monthly planners at issue.

The planners simply do not satisfy the common meaning of the term calendar.  And, the essential character of the printed material on the planners is not a system or chart representing the days, weeks or months of the year.  Therefore, the planners do not fall within heading 4910.

## IV.   THE SUBJECT MERCHANDISE IS PROPERLY CLASSIFIED IN SUBHEADING 4820.10.40, HTSUS

The merchandise is properly classified in subheading 4820.10.40, which covers "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . [r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . [o]ther," a duty-free provision.  Subheading 4820.10.40, HTSUS.  Indeed, the weekly/monthly planners at issue share

the common characteristics of not only a diary, but the other items listed in the relevant section of heading 4820.

As stated above, according to GRI 1, the first step in any classification decision is to determine whether a particular heading is appropriate.  If it is appropriate, the Court must then determine where, within that heading, the product must fall.  By its plain terms, heading 4820 contains a list of specific items followed by the general phrase, "and similar articles."  Where, as here, the product at issue is not listed *eo nomine* in heading 4820, the rule of *ejusdem generis* is used to determine the scope of the general word or phrase "and similar articles."  *See e.g. Aves. in Leather, Inc.*, 423 F.3d at 1332 (citing *Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed. Cir. 1995)).  The Federal Circuit, in *Avenues in Leather, Inc.*, 423 F.3d at 1332, held that "for any imported merchandise to fall within the scope of the general term or phrase [*ejusdem generis* requires that] the merchandise . . . possess the same essential characteristics or purposes that unite the listed exemplars . . . ."  *Id.*

The essential characteristics and purposes of the items in heading 4820 – registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries – are that they are stationery items for the recordation of various types of information.  For example, according to *Merriam Webster Dictionary*, an account book is "a book in which accounts are kept; ledger," Def. Ex. Z (*Merriam Webster Online Dictionary*) at 1, and a notebook is defined as "a book for notes or memoranda."  Def. Ex. T (*Webster's New Collegiate Dictionary*) at 778.  Similarly, an order book is "a book that shows the number of orders that a company has received from its customers . . . ," and a receipt book is defined as either "a book containing [receipts]" or "a book containing forms to be used in giving receipts for payment of money."  Def. Ex. Z (*Merriam Webster Online Dictionary*) at 7, 13.  Furthermore, in *Collins*

*Dictionary*, memo pads are defined as a "block with tear off pages for writing notes," and a register is "**a.** a record or list of names, events, items, etc., often kept by an official appointed to do so **b.** a book in which this is kept . . . ." Def. Ex. V (*Collins Dictionary*) at 16, 29. As to the statutory term diary, the Federal Circuit in *Mead* determined that the common meaning of diary includes items with a space for recording retrospective events of importance (usually more than one or two sentence). *The Mead Corporation,* 283 F.3d at 1348. All of the items are stationery products, the common purpose of which is to provide space for the writing and recordation of various information. Indeed, many of these items, such as diaries and account books often record items as they relate to a particular day.

This analysis is consistent with the analysis in the relevant Explanatory Notes. Specifically, EN 48.20 states, in relevant part:

> this heading covers various articles of stationery, **other than** correspondence goods of **heading 48.17** and the goods referred to in Note 10 to this chapter. It includes:
>
> (1) Registers, account books, note books of all kinds, order books, receipt books, copy books, diaries, letter pads, memorandum pads, engagement books, address books and books, pads, etc. for entering telephone numbers.
>
> . . .
>
> The goods of this heading may be bound with materials other than paper (e.g. leather, plastics or textile material) and have reinforcements or fittings of metal, plastics, etc.

EN.48.20 (emphasis in original). The more expansive list, all of which share unifying common characteristics – stationery items which provide space for the writing or recordation of various items – confirms this analysis. Moreover, the EN further identifies a nearly identical item to the one at issue, an engagement book. Like the term engagement calendar, an engagement book is defined in the *Collins Dictionary* as "a book or diary in which people keep a note of their social

and business appointments." Def. Ex. V (*Collins Dictionary*) at 13. As Blue Sky admits, the planners, among other things, are "used to note future appointments." Pl .Br. at 13. However, given the various sections of the planners – lined weekly view pages, contacts pages, notes pages, yearly goals – the planners share the common characteristic and purpose of the listed exemplars. They are used for the recordation and organization of not just future appointments but a variety of different information, all of which is consistent with the items listed in heading 4820, HTSUS.

Moreover, as stated above, the Federal Circuit's decision in *The Mead Corporation*, 283 F.3d 1342, should further guide this Court's analysis. In that case, the items were identified as "day planners," which fell under "similar articles" and were ultimately classified in subheading 4820.10.40, HTSUS, the "other" provision. *Id.* at 1350. Each contained "a calendar, a section for daily notes, a section for telephone numbers and addresses, and a notepad. The larger models contain[ed] the features of the basic model with additional items such as a daily planner section, plastic ruler, plastic pouch, credit card holder, and a computer diskette holder." *Id.* at 1344. The issue in that case was whether the items, strikingly similar to the ones at issue here, should be considered diaries of heading 4820.10.20, HTSUS, or as "similar articles" that are properly classified in subheading 4820.10.40, HTSUS, the "other" subheading at issue. Again, the issue was *not* whether the merchandise was a calendar under heading 4910, a classification neither party asserted and one the Court, in its *de novo* review, did not consider. *Id.* at 1347.

The Court in *Mead*, found that the common meaning of a diary is an item with space to record retrospective (not prospective) events of importance; generally, the space would allow for more than a sentence or two of information. *Id.* at 1348. In holding that the merchandise was not a diary, but an item similar to a diary, the Court focused on the "daily planner" sections,

which included only a couple of lines near each hour of the day (not enough for extensive reflection), and were intended to record past events. *Id.* at 1348-49. Consistent with the Government's classification here, the Federal Circuit instead found that the day planner was similar to the diary and was properly classified in the "other" provision, subheading 4820.10.40, HTSUS. The Court should reach the same result here.

Where merchandise is properly classified under a specific heading but does not fall within any specific subheading, it is properly classified under the relevant heading's catch-all provision. *Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1354 (Fed. Cir. 2002); *see also Well Luck Co., Inc. v. United States*, 887 F.3d 1106, 1117 (Fed. Cir. 2018) (holding that, because the subject merchandise did not fall within any of the eight-digit level subheadings preceding the HTSUS subheading with the term "other", it is properly classified under the "other" subheading) (citing *Rollerblad*e, 282 F.3d at 1354). Consequently, the planners here are properly classified in subheading 4820.10.40, HTSUS.

Blue Sky does not appear to challenge this classification other than to state that "[s]ince 2016, Customs consistently liquidated 2021 Blue Sky weekly/monthly calendars in Heading 4910, even after occasional physical examination by Customs officer." Pl. Br. at 18. These facts simply are not relevant to a *de novo* classification analysis. And, in any event, plaintiff has not established: (1) when, if at all, these precise items were previously imported; and (2) whether CBP has ever previously reviewed the items at issue, or similar items, for purposes of making a classification determination.

Moreover, Blue Sky erroneously compares the purportedly "more specific" *heading* "calendars of any kind" with the *subheading* 4820.10.40, HTSUS, referring to it as a "basket provision." Pl. Br. at 18-20. Plaintiff's analysis is incorrect. As a threshold matter, the court

must first determine the correct *heading* "without reference to their subheadings." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014).  Moreover, there is no need to conduct a specificity analysis under GRI 3(a).  That analysis, which states that "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description," applies to determine the appropriate classification when "goods are, prima facie, classifiable under two or more headings . . . ."  GRI 3(a).  Because the planners are not classifiable in heading 4910, HTSUS, the Court does not need to conduct a specificity analysis.  And, even if such an analysis *were* required, the Court would be required to compare the two headings, the terms of heading 4910, "Calendars of any kind," with heading 4820, "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . ."  The Court would not compare a heading to a subheading.[8]

For the reasons discussed, the planners at issue here are "similar articles" to the listed exemplars in the relevant portion of heading 4820 and should be classified in subheading 4820.10.40, HTSUS.

---

[8] Plaintiff also errs in reference to GRI 3(c).  Pl. Br. at 20. If the merchandise were classifiable in two headings, which it is not, the Court would conduct a specificity analysis of the headings under GRI 3(a).  It is only if classification cannot be resolved under GRI 3(a) (or GRI 3(b) which refers to composite goods), that the Court would move to a GRI 3(c) analysis.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny plaintiff's motion for summary judgment, and enter summary judgment for defendant, the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Monica P. Triana
MONICA P. TRIANA
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230

Date:  November 17, 2023          *Attorneys for Defendant*

30

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

| | | |
|---|---|---|
| | : | |
| BLUE SKY THE COLOR OF | : | |
| IMAGINATION, | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00624 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| Defendant. | : | |
| | : | |

CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT
STANDARD CHAMBER PROCEDURE 2(B)

I, Monica P. Triana, trial counsel in the Office of the Assistant Attorney General, Civil

Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for

the foregoing brief, relying upon the Microsoft Word count feature of the word processing

program used to prepare the brief, certify that this brief complies with the type-volume limitation

under USCIT Standard Chamber Procedure 2(B) and contains 8,964 words.


/s/ Monica P. Triana