UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JANE A. RESTANI, JUDGE

|  |  |  |
|---|---|---|
| BLUE SKY THE COLOR OF IMAGINATION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00624 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S RESPONSE**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

MONICA P. TRIANA
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
*Attorneys for Defendant*
Tel. No. 212-264-9240 or 9230

Of counsel:
Fariha Kabir, Esq.
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.    THE SUBJECT MERCHANDISE IS NOT CORRECTLY CLASSIFIED UNDER
SUBHEADING 4910.00.20, HTSUS, AS A CALENDAR ............................................. 3

    A.  The Weekly/Monthly Planners At Issue Do Not Satisfy The Common
Meaning Of The Term Calendar ................................................................. 3

    B.  Plaintiff's Argument For Classification In Subheading 4910.00.20, HTSUS,
Is Erroneous ............................................................................................... 8

II.   THE SUBJECT MERCHANDISE IS PROPERLY CLASSIFIED IN
SUBHEADING 4820.10.40, HTSUS ......................................................................... 13

CONCLUSION .................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**

*Aectra Ref. & Mktg v. United States,*
553 F. Supp 2d  (Ct. Int'l Trade 2007) .......................................................... 17

*Aves. in Leather, Inc. v. United States,*
423 F.3d 1326 (Fed. Cir. 2005).................................................................... 13

*Baush & Lomb, Inc. v. United States,*
148 F.3d 1363 (Fed. Cir. 1998)...................................................................... 3

*Degussa Corp. v. United States,*
508 F.3d 1044 (Fed. Cir. 2007)...................................................................... 5

*In re Brunetti,*
877 F.3d 1330 (Fed. Cir. 2017).................................................................... 16

*Mead Corporation v. United States,*
283 F.3d 1342 (Fed. Cir. 2002).......................................................... 14, 17, 18

*New Hampshire v. Maine,*
532 U.S.742 (2001).................................................................................... 10

*Rubbermaid Commercial Prods., LLC v. United States,*
32 F. Supp. 3d 1331 (Ct. Int'l Trade 2014) .................................................. 16

*Thai Plastic Bags Industries, Co., Ltd. v. U.S.,*
752 F. Supp. 2d 1316 (Ct. Int'l Trade 2010) ................................................ 10

*Totes, Inc. v. United States,*
69 F.3d 495 (Fed. Cir. 1995)....................................................................... 13

*Trustee in Bankruptcy of North American Rubber Thread Co., v. United States,*
509 F.3d 1346 (Fed. Cir. 2010).................................................................... 10

*Veterans4You v. United States,*
985 F.3d 850 (Fed. Cir. 2021)..................................................................... 16

**Harmonized Tariff Schedule of the United States**

Chapter 48

   Heading 4820................................................................................*passim*

Subheading 4820.10.40 ............................................................................................*passim*

Chapter 49

Heading 4910 ...................................................................................................................*passim*

Subheading 4910.00.20 ........................................................................................... 1,2, 3, 8

**Rules**

USCIT R. 56 ................................................................................................................... 1

**Other Authorities**

EN 48.20 ........................................................................................................... 15, 16, 17

EN 49.10 ...............................................................................................................*passim*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JANE A. RESTANI, JUDGE

|  |  |  |
|---|---|---|
| | : | |
| BLUE SKY THE COLOR OF IMAGINATION, | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00624 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S RESPONSE**

Defendant, the United States (Government), respectfully submits this reply brief in further support of its cross-motion for summary and in opposition to the motion for summary judgment filed by plaintiff, Blue Sky The Color Of Imagination (Blue Sky or plaintiff), pursuant to Rule 56 of the Rules of the United States Court of International Trade (USCIT R.).

## <u>INTRODUCTION</u>

What remains in dispute in this case is the proper classification of four items, known as weekly/monthly planners, all of which have similar characteristics and features. As a review of the samples – and the visual depiction of the production file – indicates, the weekly/monthly planners possess primary features that dictate classification in subheading 4820.10.40, Harmonized Tariff Schedule of the United States (HTSUS). *See* Def. Exs. A-D (Weekly/Monthly Planners).

Blue Sky's primary argument on reply is that the merchandise at issue has features similar to items that the Government has agreed are classified as calendars in subheading 4910.00.20, HTSUS, specifically the monthly planners, asserting that the same classification is

required for the weekly/monthly planners.  In doing so, plaintiff fails to apply basic principles for interpreting the Harmonized Tariff Schedule of the United States, that is, considering the plain meaning of the relevant tariff terms, as informed by the Explanatory Notes, and applying that analysis to the specific merchandise at issue, and improperly invokes the principle of judicial estoppel.  Calendars of subheading 4910.00.20, HTSUS, involve "a system or chart," *i.e.,* a visual depiction, "representing the days, weeks or months of the year" and does not cover the merchandise at issue here.  Gov't MSJ, ECF No. 25, at 17.  That definition does not encompass every dated item, and simply because monthly planners fall within this subheading does not dictate that the different product of weekly/monthly planners should be similarly classified. And, because the printing on the weekly/monthly planner does not impart the essential character of the item (as the Explanatory Note requires), classification in subheading 4910.00.20, HTSUS, is not appropriate.

Instead, the undisputed facts show that the weekly/monthly planners share the common characteristics and unifying purpose of the items in heading 4820 – stationery products, the common purpose of which is to provide space for the writing and recordation of various information – and are, therefore, correctly classified in subheading 4820.10.40, HTSUS. Plaintiff offers no argument or evidence to properly challenge this classification.

# ARGUMENT[1]

## I.   THE SUBJECT MERCHANDISE IS NOT CORRECTLY CLASSIFIED UNDER SUBHEADING 4910.00.20, HTSUS, AS A CALENDAR

### A.  The Weekly/Monthly Planners At Issue Do Not Satisfy The Common Meaning Of The Term Calendar

We agree that this case is ripe for summary judgment, as there are no issues of fact as to what the merchandise is.  *See Baush & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) ("[S]ummary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is.").  The dispute centers on the common meaning of the statutory term calendar.  Plaintiff's expansive application of the term calendar is incorrect.  Indeed, proper statutory analysis, as confirmed by the relevant Explanatory Note, dictates that classification of the weekly/monthly planners in heading 4910, HTSUS, as calendars is not appropriate.

As set forth more fully in our opening brief, the common meaning of the term calendar is "a system or chart representing the days, weeks or months of the year."  Gov't MSJ at 17-18.  To dispel Blue Sky's apparent confusion on the issue, Pl. Opp. Br., ECF No. 26 at 13, note 2, our position is that a calendar typically must include a table or a grid – some kind of visual depiction or reference – to identify the breakdown of the year by days, weeks, and months.  *See* Gov't MSJ at 17-20.  The purpose of the calendar is for the user to be able to determine where a particular day fits in reference to other days/weeks/months in the year.

---

[1] We are not including responses to plaintiff's additional statements of fact.  Instead, simultaneous with the filing of this brief, the Government will file a motion to strike those additional statements of fact.

In contrast, Blue Sky relied on two definitions in its opening brief, Pl. MSJ, ECF No. 20, at 14, the *Cambridge English Dictionary,* Pl. Ex. 10, [2] and the *Concise Oxford American Dictionary,* Pl. Ex. 11,[3] in concluding that a calendar is "a dated book with space to make notations about future arrangements," Pl. MSJ at 16, or "a series of pages showing the days, weeks, and months of a particular year in which people notate future arrangements." *Id.* at 18. In its latest submission, although seemingly referring to the same definitions, plaintiff now appears to rely more heavily on the definition of calendar from the *Concise Oxford American Dictionary*, – "a chart or series of pages showing the days, weeks, and months of a particular year . . ." Pl. Ex. 11 (*Concise Oxford American Dictionary*) at 3 – concluding that a calendar is a "systematic representation of the days, weeks or months of the year." Pl. Opp. Br. at 12-13. This definition from the *Concise Oxford American Dictionary* is consistent with our analysis of the statutory term. Gov't MSJ at 22. Plaintiff argues, however, that a "system" need not be a chart or grid or table, but merely requires that information be presented in some "orderly, systematic fashion." Pl. Opp. Br. at 13, and note 2. Plaintiff's analysis is wrong.

Contrary to Blue Sky's contention, almost *every* dictionary definition for calendar describes a table, grid or other visual depiction. To be sure, the definitions provide helpful context for the "chart" or "system" that define a calendar. The "system" is described in relevant dictionaries as one "for *fixing* the beginning, length and divisions of the civil year and *arranging* days and longer divisions of time (as weeks and months)," Def. Ex. T (*Webster's New Collegiate*

---

[2] Pl. Ex. 10 (*Cambridge English Dictionary*) at 1 (identifying a secondary definition for the term calendar that includes "a book with a separate space or page for each day, in which you write down your future arrangements, meetings, etc.").

[3] Pl. Ex. 11 (*Concise Oxford American Dictionary*) at 3 (defining calendar as "a chart or series of pages showing the days, weeks, and months of a particular year, or giving particular seasonal information" or "a datebook.")

*Dictionary* (1979)) at 155 (emphasis added), or for "*determining* the beginning, length, and divisions of a year into days, weeks and months."  Def. Ex. U (*Webster's New World Dictionary, Third College Edition* (1988)) at 198 (emphasis added); *see also* Def. Ex. V (*Collins Dictionary*) at 5 (describing a "system of *determining* the beginning, length and divisions of a year" or for "*arranging* the year into days, weeks and months" (emphasis added)).  Many of those same dictionaries also discuss a "table," "chart," or "register" for *depicting* the year into days weeks and months.  *See e.g.*, Def. Ex. T (*Webster's New Collegiate Dictionary*) at 155 ("a tabular register of days according to a system usu. covering one year and referring the days of each month to the days of the week"); Def. Ex. U (*Webster's New World Dictionary*) ("a table or chart that *shows such an arrangement*, usually for a single year"); Def. Ex. X (*American College Dictionary* (1962)) at 169 ("a tabular arrangement of the days of each month and week in a year").  Indeed, the definitions of a calendar envision a table or grid that will assist in "fixing" or "determining" or "arranging" the days/weeks/months of the year or a visual depiction – by way of a table or grid – that allow the user to determine where the day of the week fall within a month or year.  It does not cover every dated paper product.

This interpretation is confirmed by the Explanatory Notes, which Blue Sky ignores entirely, but which are "generally indicative of the proper interpretation of a tariff provision." *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007).  Explanatory Note 49.10 provides in relevant part:

> This heading relates to calendars of any kind whether they are printed on paper, paperboard, woven fabric or any other material, **provided** that the <u>printing</u> gives the article its essential character. They may contain, in addition to the <u>normal sequence of dates, days of the week</u>, etc., various other items of information, such as notes of important events, festivals, astronomical and other data, verses and proverbs.  They may also incorporate pictorial or advertising matter.  However, publications sometimes improperly

called calendars which, <u>although dated</u>, are published essentially to
give information concerning public or private events, etc., are
classified in **heading 49.01** (unless falling in **heading 49.11** as
publicity matter).

. . .

This heading, however, **does not cover** articles whose essential
character is not determined by the presence of a calendar.

This heading also **excludes:**

   (a)  Memorandum pads incorporating calendars and diaries (including
so-called engagement calendars) (**heading 48.20**).

EN 49.10 (bold in original and underline added).  This confirms and further clarifies that the

calendar (or the system or chart) is a depiction that identifies the "normal sequence of dates, days

of the week, etc."  *Id.*  In addition, the Explanatory Note explains that the "printing" on the item

(which could be on "paper, paperboard, woven fabric or any other material") depicting the

"sequence of dates" and "days of the week," EN 49.10, must impart the "essential character" of

the item.  *Id.*  Therefore, the Explanatory Note supports the interpretation that a grid, tabular

depiction, or something similar, which itself is "printed" on the item and used as a reference

guide, is characteristic of items classified as a calendar, and that a printed grid or table typically

gives the item its "essential character."

Moreover, the Explanatory Notes specifically identifies two additional relevant

exclusions.  First, "engagement calendars," which are used for the "daily recording of social

engagements and other appointments," Def. Ex. Y (dictionary.com), (like the items at issue

here), are specifically excluded from the items classified in heading 4910, HTSUS.  EN 49.10.

Second, the Explanatory Note clarifies that not all dated items are calendars, specifically

excluding those that simply give information about public of private events.  EN 49.10

(excluding "publications sometimes improperly called calendars which, <u>although dated</u>, are

published essentially to give information concerning public or private events." (emphasis added)).

Therefore, contrary to Blue Sky's contentions, Pl. Reply at 12-13, the weekly/monthly planners do not, as a whole, satisfy the common meaning of the term calendar.  The four weekly/monthly planners include visual depictions of a calendar, (in one sample 37 of the 153 pages), however, the printing on those pages does not, alone, give the items their "essential character."  *See* Def. Ex. A (110211-21 W/M Planner); EN 49.10.  To the contrary, the items at issue are marketed, and used, by an individual to plan their time – which is done predominantly by writing on the weekly planner pages.  *See* Gov't MSJ at 10-12.  And, the vast majority[4] of the pages in the weekly/monthly planners are weekly planner pages, not calendar pages.  In the same sample, Def. Ex. A (110211-21 W/M Planner), 106 of the 153 pages are weekly planner pages which are essentially two fully lined pages, broken down by reference to one particular week of the year, and lined sections for notes and to-do lists.  *See id.* at 262-263; *see also* Gov't MSJ at 6.

Likewise, plaintiff's reference to the image from the *Cambridge English Dictionary*, Pl. Ex. 10; Pl. Opp. Br. at 21, in support of its overbroad analysis of the statutory term calendar fails for the same reason that the secondary definition from that dictionary ("a book with a separate space or page for each day, in which you write down your future arrangements, meetings, etc.") should be ignored, *see* analysis at Gov't MSJ at 22-23; it is simply inconsistent with *all* of the

---

[4] As stated in our opening submission, Gov't MSJ at 23, note 7, the Government has not, through testimony of its USCIT R. 30(b)(6) deponent, admitted to the appropriateness of a particular legal interpretation, or the application of a particular legal interpretation to the facts of this case. *See* Pl. Opp. Br. at 12, 21.  The witness was not designated to provide legal analysis, nor would it appropriate for her to do so.  Plaintiff's insistence that a designated agent can somehow bind the Government to a legal determination, *see id.* at 13, note 13, is erroneous.  Parties do not make legal determinations, the Court does.

other definitions cited by either party, and Explanatory Note 49.10.  The image shows a fully

lined page for each dated day of the week.  However, this example serves to undermine rather

than support plaintiff's position because it illustrates exactly why plaintiff's expansive

interpretation of the term calendar, to include any orderly system, is not workable.  To adopt

such a definition would be so broad as to cover every single dated item, which is inconsistent

with the common meaning of the term calendar and the Explanatory Note, which specifically

excludes certain dated items.  *See* Gov't MSJ at 22-23.

      The planners here simply do not satisfy the common meaning of the term calendar.  And,

the essential character of the printed material is not determined by the presence of a calendar;

that is, the identity of the product is not determined by a system or chart representing the days,

weeks or months of the year.  Therefore, the weekly/monthly planners are not properly classified

in heading 4910, HTSUS.

### B.  Plaintiff's Argument For Classification In Subheading 4910.00.20, HTSUS, Is Erroneous

      Blue Sky improperly seeks to prove its case by arguing by analogy and relying on the

Government's classification of different products which have no legal significance here.

Specifically, plaintiff asserts that the four weekly/monthly planners, the classification of which

remains in dispute, and the monthly planners (Def. Exs. E (101605-21 Monthly Planner), F

(110395-21 Monthly Planner)), which we agree should be classified as calendars of subheading

4910.00.20, HTSUS, are "exactly the same except they also provide weekly calendar views" and

should be classified the same.  Pl. Opp. Br. at 24; *see also id.* at 5, 8-11, 23.  Further, plaintiff

asserts that since the Government has agreed to classification of the monthly planners in heading

4910, it is judicially estopped from asserting that the weekly/monthly planners are classified

elsewhere.  *Id.* at 5-6, 24.  Plaintiff's analysis is incorrect.

At the outset, classification of a different item – the monthly planners – does not in any way dictate the classification of the weekly/monthly planners at issue here.  While there are some overlapping characteristics, (both the monthly planners and the weekly/monthly planners include monthly view pages, notes sections, contacts pages, yearly overview, and other reference pages), these two categories of products are by no means identical.  And while plaintiff criticizes the Government for "painstakingly discussing" all of the features of the products at issue, Pl. Opp. Br. at 5; *see also id.* at 25-28, these features are relevant to the classification analysis.

Here, the characteristics or features of the weekly/monthly planners differ from those in the monthly planners in ways significant for purposes of classification.  A review of the merchandise shows, for example, that one of the monthly planners, Def. Ex. E (101605-21 Monthly Planner), contains just over 50 pages total (excluding cover pages and packaging), *id.* at 183-239, more than 70 percent of which (or 37 of the 51 pages) constitute typical calendar grids; this is true irrespective of the fact that they also contain notes pages, contacts pages, and other reference pages.  *Id.*  The weekly/monthly planners may contain the same number of calendar grids, but those grids constitute a very small portion of the overall product.  *See* Def. Ex. A (110211-21 W/M Planner).  Indeed, of the approximately 153 pages in a weekly/monthly planner, *see id.* at 243-396, the vast majority of those (106 pages) are weekly view pages, and still other pages (the contacts pages, notes pages etc.) provide even more non-calendar pages. *See id.*  These facts make the merchandise at issue distinct and require a different classification. The weekly/monthly planners, as a whole, simply are not calendars.

In attempt to apply the classification of the monthly planners to the merchandise here, Blue Sky claims that the Government is judicially estopped from classifying the weekly/monthly

planners in heading 4820.  Pl. Opp. Br. at 5-6, 24.  However, the principle of judicial estoppel does not apply.

Judicial estoppel "prevents a party who prevails on one ground in a lawsuit from repudiating that ground in order to prevail in another lawsuit."  *vs in Bankruptcy of North American Rubber Thread Co., Inc. v. United States*, 593 F.3d 1346, 1357 (Fed. Cir. 2010) (internal quotation marks and citations omitted).  That is, judicial estoppel applies "[w]here a party assumes a certain position in a legal proceeding, *and succeeds in maintaining that position*."  *Id.* at 1353 (emphasis added); *Thai Plastic Bags Industries, Co., Ltd. v. United States*, 752 F. Supp. 2d 1316, 1326 (Ct. Int'l Trade 2010) (emphasis added).  In that instance a party "may not thereafter, simply because [its] . . . interest have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken."  *Trustees in Bankruptcy,* 593 F.3d at 1353 (internal citations and quotation marks omitted); *Thai Plastic Bags Industries*, 752 F. Supp. 2d at 1326 (internal citations and quotation marks omitted).  Three factors must be considered in this analysis, all of which clearly illustrate that judicial estoppel does not apply here.  First, "a party's later position must be *clearly inconsistent* with its earlier position,"  *Thai Plastic Bags Industries*, 752 F. Supp. 2d at 1327 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)) (emphasis added); second, the party must have "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and third, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair advantage if not estopped." *Id.*

This is simply not the situation here.  We have not taken inconsistent positions with respect to the classification of the weekly/monthly planners at issue in this case.  There was no prior court proceeding in which the Government argued for classification of the weekly/monthly planners in heading 4910, and therefore, no proceeding in which a court, or agency, adopted that classification.  In fact, at the administrative level, CBP classified all of the merchandise (including weekly/monthly planners, monthly planners and desk pads), at liquidation, in heading 4820, HTSUS.  That we have since re-evaluated the classification of the monthly planners and desk pads, agreeing that those categories of items are properly classified in heading 4910, HTSUS, does not *require*, under the principle of judicial estoppel or otherwise, that CBP classify a different item (with different features) in that heading as well.

Instead, we properly analyzed the statutory term calendar as covering "a system or chart representing the days, weeks or months of the year."  Gov't MSJ at 18.  Applying that definition to different merchandise (monthly planners and weekly/monthly planners) unremarkably resulted in different classifications.

Next, Blue Sky's argument that the "weekly/monthly and monthly planner calendars are designed, marketed, sold, and displayed the same," Pl. Opp. Br. at 23, is not supported in the record, and in any event, would not alter the conclusion that the weekly/monthly planners are not calendars.  There is no evidence, other than plaintiff's self-serving testimony, that the marketing and display is the same.  Although we did not identify marketing material for monthly planners alone (since the parties agreed as to their classification) a look at the marketing material Blue Sky provided to its retail partners for the weekly/monthly planners, is instructive in highlighting the differences between the monthly planners and the weekly/monthly planners.  For example, in describing the monthly calendar pages of Def. Ex. A (110211-21 W/M Planner), Blue Sky stated

that "Monthly view pages contain previous and next month reference calendars for long term

planning, and a notes section for important projects." Def. Ex. R (Amazon.com/Item No. 110211);

Def. Ex. O (Deposition of Warren Vidovich) at 39:8-40:23. Those pages constitute the vast

majority of the pages in the monthly planners. Quite distinctly, Blue Sky described the weekly

planner pages – a description that is missing when marketing monthly planners – as "offer[ing]

ample lined writing space for more detailed planning, allowing you to keep track of your

appointments, reminders, ideas and to-do lists every day of the week." Def. Ex. R

(Amazon.com/Item No. 110211). Plainly the marketing for the different categories of monthly

and weekly/monthly planners would differ. *See also* Pl. Exs. 15, 16 (Amazon.com/Monthly

Planners). In any event, the marketing, even if the same, would not alter the application of the

common meaning of the term calendar to include the merchandise in this case.

Finally, in arguing that the inclusion of the weekly view pages does not mean the item is

not a calendar, plaintiff attempts to analogize the weekly pages to a calendar application on a

smart phone. Pl. Opp. Br. at 22. This is a flawed comparison. We are not classifying an

intangible smart phone calendar application that can be manipulated to show different views.

The Court must classify a printed planner where the vast majority of the pages are *not* calendar

pages. The Court must determine whether this printed planner is properly classified as a

calendar in accordance with the common meaning of that term. As already discussed, it is not.

\* \* \*

In sum, the essential character of the printed material in the weekly/monthly planners is

not a "system or chart representing the days, weeks or months of the year," Gov't MSJ at 18, and

therefore, should not be classified in heading 4910, HTSUS. The true nature of the item more

closely resembles an engagement book, and not a calendar, and the weekly/monthly planners should therefore be excluded from classification in heading 4910.

## II.   THE SUBJECT MERCHANDISE IS PROPERLY CLASSIFIED IN SUBHEADING 4820.10.40, HTSUS

As set forth in our opening brief, the weekly/monthly planners are properly classified in subheading 4820.10.40, which covers "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . [r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries *and similar articles* . . . [o]ther," a duty-free provision.  Subheading 4820.10.40, HTSUS (emphasis added). The parties agree that the rule of *ejusdem generis* applies in analyzing this subheading.  Pl. Opp. Br. at 14.  Where there is a list of items followed by a more general phrase, like "and similar articles," the Court must identify the common characteristic of the listed exemplars in order to determine the scope of the more general phrase.[5]  Applying this rule, subheading 4820.10.40, HTSUS covers stationery items with ample space for the recordation of various types of information.  The weekly/monthly planners here share those characteristics, and, therefore, are classifiable in heading 4820.10.40, HTSUS.

Blue Sky challenges this conclusion on two grounds: (1) that the weekly/monthly planners are dated, and the items in the list of exemplars purportedly are not; and (2) that the listed items log historical information, and the planners log future information.  Pl. Opp. Br. at

---

[5] *See e.g. Aves. in Leather, Inc. v. United States*, 423 F.3d 1326, 1332 (Fed. Cir. 2005) (citing *Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed. Cir. 1995)).  "[T]o fall within the scope of the general term or phrase [*ejusdem generis* requires that] the merchandise . . . possess the same essential characteristics or purposes that unite the listed exemplars . . . ."  *Aves. in Leather, Inc.*, 423 F.3d at 1332.

14-15.  These distinctions, if they even existed (which they do not), do not dictate a different classification.

As to the first claimed distinction, that the listed exemplars are not dated, there is no evidence to support the assertion that listed items cannot be dated.  Indeed, even plaintiff points out that not all diaries are undated, Pl. Opp. Br. at 15, note 3, and a simple search on Amazon shows that diaries can be dated, *see* Def. Ex. AA (Amazon Dated Diary).  Certainly, many of the listed items (*i.e.*, diaries and account books), record items as they relate to a particular day.  Even more important, there is nothing in the language of the tariff, or in the definition for the terms listed in subheading 4820.10.40, that prohibits, or is even inconsistent with, the classification of dated items therein.  Gov't MSJ at 25-26.  As to the second challenge, that the planners at issue purportedly record future events while the other items (according to plaintiff) record past events, Pl. Opp. Br. at 14-15, this argument is likewise insignificant.  Indeed, there is nothing in the language of the tariff or any of the definitions of the listed items, *see* Gov't MSJ at 25-26, that indicates that subheading 4820.10.40, HTSUS, (covering notebooks, registers, memorandum pads, etc.) only includes items that record information about past events.  Notably, the Federal Circuit in *The Mead Corporation v. United States*, 283 F.3d 1342 (Fed. Cir. 2002) classified Day Planners that included a daily planner in the exact heading at issue, subheading 4820.10.40, HTSUS, even though the item recorded future events.  *Id.* at 1349.  Therefore, neither of the distinctions plaintiff identifies are dispositive of classification here.

The Government's analysis and application of the tariff are consistent with the language of Explanatory Note 48.20.  It provides in relevant part:

> this heading covers various articles of stationery, **other than** correspondence goods of **heading 48.17** and the goods referred to in Note 10 to this chapter.  It includes:

> (1) Registers, account books, note books of all kinds, order books, receipt books, copy books, diaries, letter pads, memorandum pads, engagement books, address books and books, pads, etc. for entering telephone numbers.
>
> . . .
>
> Some articles of this heading often contain a considerable amount of printed matter but remain classified in this heading (and not in Chapter 49) **provided** that the *printing is incidental to their primary use*, for example, on forms (essentially for completion in manuscript or typescript) and diaries (essentially for writing).
>
> The goods of this heading may be bound with materials other than paper (e.g. leather, plastics or textile material) and have reinforcements or fittings of metal, plastics, etc.

EN 48.20 (bold in original, italics added).  As previously stated, Gov't MSJ at 26, the items listed are stationery items which provide space for the writing or recordation of various pieces of information.  Indeed, there is no reference to whether an item is dated, or whether the information recorded is related to past or future events, nor are those characteristics ostensibly relevant from the listed exemplars.

Like Explanatory Note 49.10, Explanatory Note 48.20 requires consideration of the printed material.  EN 48.20 provides that where the printing on the item is *incidental* to the primary use of an item, classification remains in heading 4820 (not Chapter 49).  Juxtapose this language with the language of Explanatory Note 49.10 which requires that for classification in heading 4910, the printing itself – such as the printing that provides a depiction of days, weeks or months of the year (*i.e.*, a calendar) – must give the item its *essential character*.  With respect to a planner, such as the merchandise here, the printed information is incidental to the main purpose of the item which is to provide the user with the necessary space to input information in an organized fashion, consistent with the common characteristics of items classified in heading 4820 (stationery items used for the recordation of various types of information).

15

Notably, Explanatory Note 48.20 specifically calls out an item, classifiable in heading 4820, which is indistinguishable to the one at issue, an engagement book.  EN 48.20.  Like the term engagement calendar,[6] an engagement book is defined in the *Collins Dictionary* as "a book or diary in which people keep a note of their social and business appointments."  Def. Ex. V (*Collins Dictionary*) at 13.  As plaintiff admits, the planners, among other things, are used for that precise purpose, "to note future appointments."  Pl. MSJ at 13.  Consideration of the various additional sections of the planners (contacts pages, notes pages, yearly goals *etc.*), not only satisfies the term "engagement book," but also establishes that the weekly/monthly planners share the common characteristic and purpose of the listed exemplars, the recordation and organization of not just future appointments but a variety of different information.

Blue Sky's attempt at distinguishing the Explanatory Note, and the identification of the precise item at issue (engagement book), stretches the bounds of rationality.  First, plaintiff curiously refers to the *Collins Dictionary*, which includes the term "engagement book," as "obscure."  Pl. Opp. Br. at 16.  However, the Court of International Trade and the U.S. Court of Appeals for the Federal Circuit, have, on many occasions, referenced definitions from that source.  *See Veterans4You LLC v. United States*, 985 F.3d 850, 862-63 (Fed. Cir. 2021) (citing the *Collins English Dictionary* definition for the term "printing"); *In re Brunetti*, 877 F.3d 1330, 1338 (Fed. Cir. 2017) (citing definition from the *Collins Online Dictionary*); *Rubbermaid Commercial Prods., LLC v. United States*, 32 F. Supp. 3d 1331, 1346 (Ct. Int'l Trade 2014) (citing definition from *Collins English Dictionary*).  Moreover, plaintiff's assertion that the cited definition of engagement book – "a book or diary in which people keep a note of their social or

---

[6] An engagement calendar (excluded, in the EN, from classification in heading 4910), is used for the daily recording of social engagements or appointments, Def. Ex. Y (Dictionary.com) at 1. *See* Gov't MSJ at 21.

business appointments," Def. Ex. V (*Collins Dictionary*) at 13 – "contemplates an *undated*

article . . . designed to record information about **past**, not future, events" is plainly erroneous.  Pl.

Opp. Br. at 16 (bold and underline in original, italics added).  Social and business appointments

would logically be both *dated* and in the future.  The reference to an engagement book (as being

included under EN 48.20) and engagement calendars (as being excluded under EN 49.10), both

likely identical to each other and the items at issue, is telling, and strongly supports classification

of the weekly/monthly planners in heading 4820.  *See* Def. Ex. V (*Collins Dictionary*) at 13; Def.

Ex. Y (Dictionary.com) at 1.

      Contrary to plaintiff's assertions, our interpretation of the relevant statutory provisions,

and their Explanatory Notes, neither violates the "whole act" rule – which states that a provision

must be read in context of the whole act, *Aectra Ref. & Mktg v. United States*, 553 F. Supp. 2d

1318, 1323-24 (Ct. Int'l Trade 2007), nor does it lead to "absurd consequences."  *See* Pl. Opp.

Br. at 16-17.  And, plaintiff fails to state how either of the cannons identified even applies,

referencing only the dated/undated distinction.  *Id.* at 16-18.  Rather, analysis of the plain

language of the tariff provisions at issue and the Explanatory Notes dictate classification of the

merchandise in heading 4820.  Neither principle of statutory construction plaintiff refers to are

violated by classifying the planners as "similar articles" under subheading 4820.10.40, HTSUS.

      Finally, Blue Sky's attempt to distinguish the Federal Circuit's decision in *Mead*, 283

F.3d 1342 is unavailing.  *See* Pl. Opp. Br. at 18.  As set forth in our opening brief, Gov't MSJ at

27-28, the issue in that case was whether the day planners should be classified in subheading

4820.10.40, HTSUS, as "similar articles" to the listed exemplars, or under the *eo nomine*

provision for diaries.  The day planners included, among other things, a calendar, notes section,

contact information, a note pad, and a daily planner section.  In classifying the planners as

"similar article[s]," and not diaries, the Court considered the daily planner section, with a page

for each day, broken down hourly, and with a couple of lines per hour.  *Mead*, 283 F.3d at 1348.

According to the Court, it was *not* intended to record past events, and could not include extensive

notations, and therefore was not a diary, but a "similar article" to those listed – the same

classification the Government asserts here.  *Id.* at 1348-49.  Plaintiff attempts to distinguish

*Mead* mainly because, it contends, only one page of the item was dated, whereas most of the

pages in the merchandise at issue are dated.  Pl. Opp. Br. at 18.  However, it is unclear from the

decision whether the items in *Mead* were dated.  *Mead*, 283 F.3d at 1242.  Nor, for that matter,

did the *Mead* court find this factor to be relevant in determining classification in heading 4820.

That fact is also not dispositive here.

Plaintiff then equates the article in *Mead* to "undated lined stationary pages with a single

calendar at the beginning or end for quick reference," which, plaintiff claims is excluded under

EN 49.10.  Pl. Opp. Br. at 18.  Although we agree that Explanatory Note 49.10 is plainly relevant

to this analysis (something plaintiff appeared to deny previously), plaintiff seems to be

referencing the exclusion for "memorandum pads incorporating calendars and diaries (including

so-called engagement calendars)."  This exclusion, however, does not cover only "undated lined

stationary pages," but also, covers engagement calendars (used for the daily recording of social

engagements or other appointments, Def. Ex. Y (Dictionary.com) at 1), similar to the

weekly/monthly planners at issue.  Therefore, as stated in our opening brief, the decision in

*Mead* supports classification of the merchandise at issue in heading 4820, HTSUS.

For the reasons discussed, and for the reasons discussed in our opening brief, the

weekly/monthly planners at issue here are "similar articles" to the listed exemplars in the

relevant portion of heading 4820 and should be classified in subheading 4820.10.40, HTSUS.

## CONCLUSION[7]

For the foregoing reasons and those in our moving papers, this Court should deny plaintiff's motion for summary judgment, and enter summary judgment for defendant, the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Monica P. Triana
MONICA P. TRIANA
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230

Date:  February 12, 2024          *Attorneys for Defendant*

---

[7] Plaintiff mentions is its brief that it is entitled to fees and costs because of our position in this case.  Pl. Opp. Br. at 7, 29.  The Court should reject plaintiff's suggestion as this assertion is unsupported, improper, and unwarranted.

19

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

| | |
|---|---|
| | : |
| BLUE SKY THE COLOR OF | : |
| IMAGINATION, | : |
| | : |
| Plaintiff, | :      Court No. 21-00624 |
| v. | : |
| | : |
| UNITED STATES, | : |
| Defendant. | : |
| | : |

CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT
STANDARD CHAMBER PROCEDURE 2(B)

I, Monica P. Triana, trial counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief, relying upon the Microsoft Word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 5,668 words.


/s/ Monica P. Triana