# United States Court of Appeals for the Federal Circuit

**BLUE SKY THE COLOR OF IMAGINATION, LLC,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

2024-1710

Appeal from the United States Court of International Trade in No. 1:21-cv-00624-JAR, Senior Judge Jane A. Restani.

Decided: December 4, 2025

CHRISTOPHER J. DUNCAN, Squire Patton Boggs LLP, Los Angeles, CA, argued for plaintiff-appellant. Also represented by ELON ABRAM POLLACK, Stein Shostak Shostak Pollack & O'Hara, LLP, Los Angeles, CA.

MONICA PERRETTE TRIANA, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by AIMEE LEE, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER, BRETT SHUMATE.

Before LOURIE, BRYSON, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Blue Sky The Color of Imagination, LLC (Blue Sky) appeals from a final decision by the Court of International Trade (the Trade Court), which *sua sponte* classified Blue Sky's imported product as a "diary" under subheading 4820.10.20.10 within the Harmonized Tariff Schedule of the United States (HTSUS). *See Blue Sky Color of Imagination, LLC v. United States*, 698 F. Supp. 3d 1243, 1245 (Ct. Int'l Trade 2024) (*Decision*). Blue Sky, on appeal, contends that its imported product should be classified as a "calendar" under Heading 4910 of the HTSUS. Because the Trade Court's interpretation of "diary" conflicts with how we interpreted the term in *Mead Corp. v. United States*, 283 F.3d 1342 (Fed. Cir. 2002), we *reverse* and *remand*.

## BACKGROUND

### I

Blue Sky imports paper products. One of its product lines—which Blue Sky labels a "weekly/monthly planning calendar" but the Government labels a "planner"—contains several pages bound together by a spiral. Some pages in the product depict a traditional monthly calendar (monthly view):



J.A. 472–73. Other pages break down each individual week into the seven days (weekly view):



J.A. 476–77.

II

The HTSUS establishes tariff rates for various imported goods. It categorizes the products into headings, and each heading contains increasingly specific subheadings. *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). The HTSUS "shall be considered to

be statutory provisions of law for all purposes." 19 U.S.C. § 3004(c)(1).

Heading 4820, HTSUS (2020), the first heading relevant for this appeal, classifies products as follows:

> **4820.00**: Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles, exercise books, blotting pads, binders (looseleaf or other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationery, of paper or paperboard; albums for samples or for collections and book covers (including cover boards and book jackets) of paper or paperboard:
>
>> **4820.10.00**: Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles:
>>
>>> **4820.10.20.00**: Diaries, notebooks and address books, bound; memorandum pads, letter pads and similar articles
>>>
>>>> **4820.10.20.10**: Diaries and address books
>>>>
>>>> . . .
>>>>
>>>> **4820.10.20.60**: Other
>>>
>>> **4820.10.40.00**: Other

Heading 4910, HTSUS (2020), the other relevant heading, classifies products as follows:

> **4910.00**: Calendars of any kind, printed, including calendar blocks: Printed on paper or paperboard in whole or in part by a lithographic process:

>    **4910.00.20.00**:  Not over 0.51 mm in thickness . . .
>
>    **4910.00.40.00**:  Over 0.51 mm in thickness
>
>    **4910.00.60.00**:  Other

### III

Customs and Border Protection (CBP) classified Blue Sky's product as "[o]ther" under subheading 4820.10.40.00. *Decision*, 698 F. Supp. 3d at 1249–50. Blue Sky timely protested that classification, but CBP denied review. Blue Sky then filed a complaint in the Trade Court, arguing that its product qualifies as a "calendar" under heading 4910; the Government, in response, maintained its classification of "[o]ther" under subheading 4820.10.40.00. *Id.* at 1251–52.

The Trade Court granted summary judgment, rejecting both classifications. It understood that Blue Sky's product "is 'used to note future appointments,'" but reasoned the term "diary" encompasses such prospective tools (used for planning ahead). *Id.* at 1245 (citation omitted); *see id.* at 1253 ("[D]iaries are both retrospective journals, and prospective scheduling devices."). The Trade Court accordingly chose to strike its own path and classified Blue Sky's product as a "diary" under HTSUS subheading 4820.10.20.10. *Id.* at 1255.

In so holding, the Trade Court acknowledged that this court already limited the term "diary" to cover products only geared toward retrospective reflection—as opposed to prospective scheduling—over 20 years ago. *See id.* at 1254 & n.24 (discussing *Mead*, 283 F.3d at 1342); *see Mead*, 283 F.3d at 1348. But the Trade Court nevertheless believed that it "need not rely on the narrow definition used" in *Mead* where those products were not bound. *Decision*, 698 F. Supp. 3d at 1254 n.24. The Trade Court thus departed from *Mead* because the products here are bound, with just some pages for scheduling, a few pages for notes, a page for goals, and a page for contacts.

Blue Sky appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(5).

## STANDARD OF REVIEW

We review the Trade Court's grant of summary judgment regarding a tariff classification without deference. *Deckers Corp. v. United States*, 752 F.3d 949, 954 (Fed. Cir. 2014) (citing *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011)). Further, because no material facts are disputed here, our inquiry of classifying products "collapses into a determination of the proper meaning and scope of the HTSUS terms," a determination that is "a matter of statutory construction [that] is a question of law" and that we review de novo. *Len-Ron Manufacturing Co. v. United States*, 334 F.3d 1304, 1308 (Fed. Cir. 2003) (internal quotations and citations omitted) (emphasis removed).

Classification of imports under the HTSUS requires two steps. "First, the trial court must construe the meaning of terms in a given tariff provision." *Id.* (citing *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998)). "Second, the trial court must determine if the merchandise at issue falls within the tariff provision that the court just construed." *Id.* (citing *Orlando*, 140 F.3d at 1439). The former presents a question of law, which we review de novo, while the latter raises a question of fact, which we review for clear error. *Id.*

## DISCUSSION

"[T]he doctrine of *stare decisis* is of fundamental importance to the rule of law." *Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 197, 202 (1991) (citing *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 494 (1987)). It "binds courts to follow their own earlier decisions or the decisions of a superior tribunal." *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365, 1373 (Fed. Cir. 2001). The doctrine "makes each

judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision." *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993) (citation omitted).

Blue Sky believes that the Trade Court ran afoul of this bedrock principle by adopting a definition of "diary" directly at odds with the definition of "diary" set forth in *Mead*. We agree.

I

*Mead*, a precedential decision issued from our court upon remand from the Supreme Court, evaluated whether CBP correctly classified the merchandise-at-issue as a "diary" within subheading 4820.10.20. *See* 283 F.3d at 1346–48. In resolving that question, however, we first construed the metes and bounds of the term. *See id.* at 1347–48. Specifically, we determined:

> In addition, a diary is a "record" in the sense that it "recalls or relates *past* events." A diarist records events, observations, feelings, or thoughts after they happen. *A diary is retrospective, not prospective.* A diary is not a place to jot down the date and time of a distant dentist appointment, regardless of whether that appointment would constitute an "event of importance."

*Id.* at 1348 (second emphasis added) (citation omitted). That language did not represent mere dictum; we relied on it for our final holding. *See id.* ("Applying these aspects of the definition of a diary, the imports are articles similar to diaries (encompassed by 'other' in subheading 4820.10.40), rather than diaries themselves under subheading 4820.10.20.").

II

Stare decisis commands respect for a past interpretation of a tariff classification term—just as it would for a

prior interpretation of any other statutory phrase. *Deckers*, 752 F.3d at 966 ("[B]oth the Court of International Trade and any subsequent panel of this court are bound by the earlier panel's classification construction."); *see also Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 (Fed. Cir. 2017) ("The HTSUS 'shall be considered to be statutory provisions of law for all purposes.'" (quoting 19 U.S.C. § 3004(c)(1)); *Neal v. United States*, 516 U.S. 284, 295 (1996) ("Once we have determined a statute's meaning, we adhere to our ruling under the doctrine of *stare decisis*").

*Mead*'s interpretation of "diary" thus controls. And because *Mead* held that "[a] diary is retrospective, not prospective," whereas the Trade Court found that Blue Sky's product "is 'used to note *future* appointments,'" the Trade Court should not have classified Blue Sky's product as a diary. *Mead*, 283 F.3d at 1348; *Decision*, 698 F. Supp. 3d at 1245 (emphasis added). It thus erred by doing so.

The Trade Court saw things differently. In its view, because *Mead* relied on pre-HTSUS caselaw and did not engage with the relevant Explanatory Notes,[1] it "need not rely on the narrow definition used" in *Mead*. *Decision*, 698 F. Supp. 3d at 1254 n.24. Moreover, the Trade Court determined that *Mead* is inapposite because "[t]he subject merchandise now before the court is different from the subject merchandise that was before the court in *Mead*." *Id.*

---

[1] Explanatory Notes, issued by the World Customs Organization, provide non-binding guidance for interpreting a tariff classification term. *See Marubeni Am. Corp. v. United States*, 35 F.3d 530, 535 n.3 (Fed. Cir. 1994) ("Explanatory Notes are only instructive and are not dispositive or binding."); *Shamrock Building Materials, Inc. v. United States*, 119 F.4th 1346, 1352 (Fed. Cir. 2024) (using Explanatory Notes to "help resolve an interpretive dispute").

*Mead*, however, never restricted its construction of "diary" to the particular merchandise presented. *See generally* 298 F.3d 1342. Nor would it make any sense to do so, as the metes and bounds of a tariff term—a question of law—does not turn upon the factual intricacies of the disputed merchandise.[2] *See Deckers*, 752 F.3d at 954 (requiring courts to first construe the meaning of a term, before then examining the disputed products). On the meaning of "diary," *Mead* was clear: "[a] diary is retrospective, not prospective." *Mead*, 298 F.3d at 1348.

*Mead*, moreover, never relied on the vitality of pre-HTSUS caselaw for its holding;[3] *Mead* interpreted the very same term in the very same provision at issue today: "diary" within subheading 4820.10.20 of the HTSUS. *See id.* And to the extent the Trade Court found *Mead*'s analysis of "diary" incomplete or otherwise lacking (say, because it never considered various explanatory notes), the Trade Court had no liberty to make that judgment call for itself. *See Mendenhall*, 5 F.3d at 1570.

The Trade Court thus erred by expansively interpreting "diary" to include "prospective scheduling devices," and accordingly misclassified Blue Sky's planner as a "diary" under subheading 4820.10.20.10. This error also tainted its analysis of "calendar" within heading 4910—Blue Sky's

---

[2] Of course, a court need not resolve a particular nuance in the construction of a tariff term if the nature of the disputed merchandise does not implicate that subtlety. But once a higher court establishes a particular meaning, that construction constitutes established law. *See Deckers*, 752 F.3d at 966.

[3] The *Mead* court, recognizing the HTSUS established a more precise classification scheme than the pre-existing scheme, observed that it "must [now] define and differentiate diaries with a finer point than those earlier [pre-HTSUS] cases." *Mead*, 298 F.3d at 1348.

preferred classification—and its analysis of "[o]ther" within subheading 4820.10.40.00—the Government's preferred classification. *See Decision*, 698 F. Supp. 3d at 1253 ("The subject merchandise therefore appears to the court to be diaries, and thus properly excluded from heading 4910 . . . ."); *id.* at 1254–55 ("As the products at issue are diaries, the correct classification is 4820.10.20.10, HTSUS. Accordingly, the Government's asserted basket provision, "other," is rejected." (alteration omitted)). We therefore reverse the Trade Court's decision.

### III

The Government, on appeal, offers some seemingly persuasive arguments for why Blue Sky's product falls within the heading 4820, as opposed to heading 4910. For one, items enumerated within heading 4820 describe stationery items for recording various types of information—many of them with pre-defined templates allowing users to write down information, much like Blue Sky's product. For another, Explanatory Note 48.20 explains that heading 4820 "includes . . . engagement books," whereas Explanatory Note 49.10 indicates that "heading [4910] *excludes* . . . so-called engagement calendars."). Explanatory Note 48.20; Explanatory Note 49.10.

Nevertheless, we find it more prudent for the Trade Court to consider those arguments in the first instance on remand.[4]

---

[4] We note that Heading 4820 includes two classifications of "other," one as 4820.10.40.00 (as the Government originally contended applies to the subject merchandise in this case) and the other as 4820.10.20.60. Many of the Government's argument seem equally, if not more, applicable to the latter.

Case 1:25-cv-00624-JAR   Document 40   Filed 12/04/25   Page 11 of 11
Case: 24-1673   Document: 49   Filed: 12/04/2025   Page: 11 of 11

BLUE SKY THE COLOR OF IMAGINATION, LLC v. US    11

CONCLUSION

We have considered the parties' remaining arguments but find them unpersuasive. For the foregoing reasons, we reverse the Trade Court's decision and remand for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED**

COSTS

No costs.