UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| BLUE SKY THE COLOR OF IMAGINATION, LLC<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 21-00624 |

## PLAINTIFF'S SUPPLEMENTAL SUMMARY JUDGMENT BRIEF

Plaintiff Blue Sky the Color of Imagination, LLC ("Blue Sky") respectfully submits this Supplemental Summary Judgment Brief pursuant to the Court's February 11, 2026 Order, ECF No. 55. Blue Sky hereby renews its motion for summary judgment in its favor. Alternatively, if this Court does not grant summary judgment, Blue Sky requests a bench trial.

The government concedes that Blue Sky's monthly planners are "calendars" because of their monthly calendar pages, which are virtually identical to the monthly calendar pages in the four models of Blue Sky's weekly/monthly planners at issue in this case. ECF No. 25, Defendant's Cross-Motion for Summary Judgment ("Gov. MSJ"), at 3. The narrow question here is whether the inclusion of weekly calendar pages in addition to monthly calendar pages transforms what the government admits is a calendar into something else. The answer is no.

The government has been unable to firmly identify what the weekly/monthly planner is if not a calendar. Before this court, it has claimed it is a generic "other" in subheading 4820.10.40, *id.* at 24, while on appeal it claimed to the contrary that it is a "diary" in subheading 4820.10.20.10, Doc. 13, Brief for Defendant-Appellee at 31. Presumably, on remand the government will revert

to defending its abandoned "other" classification. The government's inconsistency reveals the weakness of its position.

It is a wonder the government finds it so difficult to describe Blue Sky's rather simple product, ultimately settling for an unsatisfying and disfavored basket provision. The government labors to avoid calling Blue Sky's weekly/monthly planner a calendar despite its admission that Blue Sky's monthly planner, which likewise has ample space for writing planning notes in each calendar box, is a calendar. Customs recently further complicated the government's tenuous litigation position by expressly ruling that week-to-view planner organizers, which contain only weekly calendars that are virtually identical to Blue Sky's weekly planner calendars, and are designed specifically for writing extensive family-member scheduling notes in very large calendar boxes, are calendars. *See* NY N350537, *The tariff classification of calendars from China* (July 2, 2025). The government notes that, because of its weekly layout, the weekly calendar portion of Blue Sky's product has slightly more space to write notes than the monthly calendar portion, but that is not the right question. To the extent there is any ambiguity in the HTSUS headings (and there is not), tariff classification involving an *eo nomine* heading depends on the essential physical characteristics of the product, not the relative proportions of its constituent components. If, as the government now admits, weekly planners are calendars and monthly planners are also calendars, then combined weekly/monthly planners must of course also be calendars.

This Court correctly recognized the distinction between Chapter 48 and Chapter 49: Chapter 48 presents generic stationery items which users customize to fit a given context, while Chapter 49 refers to "paper products where the printing provides the essential character of the articles." ECF No. 41, Opinion ("CIT Op."), at 11. For calendars, the printed date structure provides the central organizing principle for how a user interacts with the product and structures

the organization of the data which the user inputs, whereas for the generic products in Chapter 48, to the extent there is any printing, and there need not be, it is secondary to the user's ability to customize the organization of data. A calendar without a printed, organized date structure for a specific calendar year is like a painting without paint—there is just no such thing. Conversely, a paper product containing entirely printed calendars, whether in yearly, monthly, or weekly formats, is a calendar regardless of the space provided for note-taking or any other secondary feature.

Given the government's admission that Blue Sky's monthly calendars are calendars and its latest binding ruling that Blue Sky's weekly calendars are also calendars, there is a consensus that Blue Sky's four models of weekly/monthly planners containing both kinds of calendar layouts are calendars under heading 4910. Accordingly, the Court must enter judgment for Blue Sky.

**I.      GRI 1 CONFIRMS BLUE SKY'S COMMON-SENSE READING OF THE HTSUS**

Classification analysis begins with GRI 1, which provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." CIT Op. 11. The "heading" refers to "the first four digits of an HTSUS provision." *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 n.4 (Fed. Cir. 2017). Here, the relevant Chapter 49 heading is 4910, "Calendars of any kind" and the relevant Chapter 48 heading is 4820 which presents a litany of exemplars such as "registers, account books, notebooks, order books," none of which cover the Blue Sky weekly/monthly planner. These provisions are both *eo nomine*. Def.'s Response to Plaintiff's Rule 56.3 Statement, Doc. 25-2, at 5; CIT Op. 12. Thus, the issue here is whether Blue Sky's planners fall within the heading terms in heading 4910 or heading 4820.

Heading 4910 refers to "calendars ***of any kind***" (emphasis added), which is the broadest and most inclusive description Congress could have used and includes no limitations, restrictions, or exclusions. The Blue Sky weekly/monthly planner is comprised entirely of monthly and weekly calendars and so falls completely within the explicit statutory language of heading 4910. Given

the unlimited scope of heading 4910, no further inquiry is required, and reference to the Explanatory Notes (ENs) is neither necessary nor appropriate.

### A.    The Blue Sky Weekly/Monthly Planner is a Calendar

The Court and the government agree that the monthly portion of a Blue Sky weekly/monthly planner constitutes a calendar. Any reasonable examination of the weekly portion yields the same result—users interact with the weekly pages in the same manner as they do the monthly pages; the two are not distinct or conflicting but complementary parts of a single calendar year 2021 printed paper calendar product. The same is true of the yearly, monthly and weekly views of any other kind of calendar, printed or electronic, with multiple calendar view formats.

The weekly section of the Blue Sky weekly/monthly planner at issue plainly meets the definition of a "calendar" in British English.[1] It is primarily a "table showing the division of a given year into its months and days" with tabular rows for each day of the week. CIT Op. 12. Previously, the Court thought it potentially disqualifying that one could also use them to "make notations regarding" the days in addition to merely tracking them. CIT Op. 13. But this "principal use" type restriction is absent from the *eo nomine* heading language and the notation characteristic is equally present in any monthly calendar, including desk and wall calendars.

---

[1] Blue Sky takes no position on whether American or British English provides the relevant framework. There is no relevant difference between the two. The weekly/monthly planner also plainly meets the government's American English definition in that it is "a system or chart representing the days, weeks or months of the year." Gov. MSJ 18. Again, the presence of space to take notes is irrelevant and not supported by the heading language in either heading 4910, which covers every single kind of calendar, or heading 4820, which explicitly does not cover any kind of calendar. Similarly, the government purports to import an "essential character" analysis from the ENs into the GRI 1 analysis. Gov. MSJ 19 n.6. Setting aside the metaphysical question whether any product's dictionary definition could ever be distinct from its "essential character," this analysis is either unnecessary or improper. It is unnecessary to the extent it needlessly complicates the straightforward GRI 1 analysis, and it is improper to use the ENs to narrow or create ambiguities in HTSUS headings. *See Apple Inc. v. United States*, 964 F.3d 1087, 1095-96 (Fed. Cir. 2020).

| THURSDAY | FRIDAY | SATURDAY |
|---|---|---|
| **2** 184/182 | **3** 185/181 | **4** 186/180 Independence Day |
| Dr. Johnson, 8am | Kids carpool w/ Darren | Cookout at 2pm |
| No Baseball Practice | | |
| | Dinner at Susan's, 7pm | |

*Figure 1. An example of an annotated monthly (July) view for a busy family*

This Court and its predecessor court have both held that the ability to make notations is inherent in a calendar of any size or format. *See Sormani v. United States*, 33 Cust. Ct. 423, 424 (Cust. Ct. 1954) (finding that a product which provided "a space" that enabled a user "to record … a few scanty notations, or a reference to an engagement or two for the day," is a calendar); *Charles Scribner's Sons v. United States*, 574 F. Supp. 1058, 1059 (CIT 1983) (finding that an engagement calendar is a calendar even though it is designed for the user to make extensive notations in calendar boxes for each day). Indeed, the ability to note is fundamental to a calendar— few customers would be interested in purchasing a calendar simply for the fleeting pleasure of knowing whether November 5th is a Tuesday. Even "calendar blocks," which are specifically named as an exemplar in heading 4910, are not formatted as a table, and depict calendars in a simple daily layout in which each printed calendar page represents a single day, can be written on.

Electronic calendars like Apple Calendar and Microsoft Outlook include the ability to input virtually limitless notations for a given day, yet, we all still call them "calendars." The government's own Rule 30(b)(6) witness confirms that one makes notations on a calendar with Outlook, just as with a physical calendar. ECF No. 20, Plaintiff's Motion for Summary Judgment ("Blue Sky MSJ"), at 13. The same is true with the Court's own "weekly court calendar," https://www.cit.uscourts.gov/sites/cit/files/CAR-Internet-Current.pdf, which contains significant

notations on scheduled cases in each calendar box. The government denies these facts without citing any evidence, Gov. MSJ 5, but they are all true. The government speculates that there must be some difference between electronic and physical notations, but it does not explain what this difference might be or what relevance it has here as it pertains to dictionary definitions of "calendar," none of which make such a distinction or restriction.

The weekly calendar no doubt provides a bit more space for a given day to notate than the monthly calendar but this does not change the Court's analysis. The government admits that the definition of "calendar" carries with it the ability to make notations so that fact alone is sufficient to place the weekly planner within that definition; nothing in the definition of the term offers any upper limit on the amount of notating users can make for each calendar day. Such a vague standard would be directly contrary to heading 4910, which contains no such limitation, and is unworkable in practice. Some people have large handwriting and poor eyesight; some people have very fine handwriting and keen eyesight. Consequently, calendars can be large or small and provide ample space for detailed notes or a smaller space for quick reference, but the way in which users interact with the calendar does not fundamentally change. A rule that somehow removes certain kinds of calendars from the definition of calendar based purely on relative daily calendar box size, as the government implies, is contrary to heading 4910, inconsistent with all dictionary definitions, and makes no practical sense. The government's novel notation space rule is tantamount to an "I know it when I see it" subjective legal standard strongly disfavored by the Federal Circuit. *See, e.g., Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1370 (Fed. Cir. 2006) (disfavoring application of a "subjective-intrinsic" test in the patent context).

This Court stated that "Chapter 48 is for other paper products that can be used to record various kinds of information." CIT Op. 11. But this is true of many items in Chapter 49 as well.

For example, heading 4909 incudes "printed or illustrated postcards," on which users are expected to "record various kinds of information" when, for example, sending a friend a postcard while on vacation; heading 4906 includes blueprints; heading 4904 includes sheet music. Users make personal notations on all of these kinds of printed products—postcards most necessarily (one does need to add the address) but also products like sheet music, on which a practiced musician may make notes about upcoming transitions, conductor preferences, how best to complement their bandmates' play style, and the like.

The trait which all of these products have in common is that they are defined first and foremost by their printed structure *and* secondarily as a tool to make notations that complement the printing—sending a postcard from Italy to a friend, making notations on how to play difficult pieces of sheet music, or noting future appointments in a calendar. Meanwhile, the Court correctly observed that Chapter 48 concerns "other paper products that can be used to record various kinds of information." For these products, the printed structure, to the extent there is any, is totally incidental and the focus is entirely on the information which the user records historical information. Under Chapter 48, a "notebook" could easily be customized as an "order book," a "journal" can be kept as a "diary," and a "letter pad" would make a fine "memorandum pad." The average customer at an office supply store is unaware of, nor at all concerned with, the nuanced (and often largely theoretical) distinctions between many of these Chapter 48 items.[2] The customer just wants something to write whatever they want in. Chapter 49 is different—no one would use sheet music as a blueprint, or a calendar as a postcard. In other words, heading 4820 products are generically used for recording historical information the same way even if they have very little printing or no printing at all. The opposite is true of heading 4910 calendars such as Blue Sky's weekly/monthly

---

[2] The government's argument focuses on the similarities between these items which, they argue, all share "essential characteristics and purposes." Gov.MSJ 25. No such argument could be made for Chapter 49 items.

planners, which were identified for purchase by consumers in late 2020 based entirely on their calendar year 2021 printing, are useless without their calendar year 2021 printing, and became obsolete just a few months into calendar year 2021 because of their calendar year 2021 printing.

Commercial practice confirms this. Blue Sky markets and sells its weekly/monthly planners in the same area and manner as it sells its other kinds of calendars, including its monthly planners. ECF No. 26 ("Blue Sky Opposition and Reply"), at 23-24 (citing evidence); *see also*, Declaration of Christian Japlit, attached (declaring that dated planners are a kind of calendar). The government denigrates this evidence as "self-serving" but does not dispute its accuracy. ECF 29 ("Gov. Reply"), at 11. And the government struggles to identify any meaningful difference. The government highlights that the monthly pages are used for "long term planning, [with] a notes section for important projects," whereas the weekly calendar offers "ample lined writing space for more detailed planning, allowing you to keep track of your appointments [by date], reminders, ideas and to-do lists every day of the week." *Id.*, at 12. The government perceives these qualities as "quite distinct," ignoring that both described "planning" functions are fundamentally the same and both the weekly and monthly pages have lined writing space for notating such plans. *Id.* It is unclear how providing *more* of something useful—such as writing space for "more detailed" planning of the same type—makes any relevant distinction, much less a controlling one.

The government goes to great lengths to avoid agreeing with Blue Sky that the weekly planners meet the dictionary definition of the term *calendar*, although it cannot help but let it slip that "daily planners would likely satisfy the definition of calendar in the Cambridge English Dictionary." Gov. MSJ 23. The government alleges Blue Sky uses "a secondary definition" from the Cambridge English Dictionary, *id.*, at 22, and so the government dismisses it as an outlier. But, the government does not disagree that Blue Sky's weekly/monthly planner meets the calendar

definition.[3] In response to the government's own witness's admission on this very point that Blue Sky's weekly planner portion meets this generally accepted definition of calendar, the government claims "the manner in which a party defines a statutory term is irrelevant to the Court's *de novo* legal determination." Gov. MSJ 23 n.7. This is a strange way to treat the government's own witness's sworn testimony and betrays the inherent gamesmanship of the government's litigation position. Further, it is telling that the government cannot clearly or consistently articulate the distinction it asks the Court to draw, or a dictionary definition of "calendar" that Blue Sky's weekly/monthly planner does not meet. This is because the planners' monthly and weekly pages meet all dictionary definitions of calendars so there is no need to look beyond heading 4910.

And so in its quest to convince this Court to find differently than its own admitted positions, the government turns its focus to a source of last resort: the ENs. Gov. MSJ 18-19. The government argues that that the Court should reject Blue Sky's interpretation of heading 4910 in part because it is "inconsistent with … the Explanatory Notes." Gov. MSJ 17. But the government's entreaty invites the Court to commit reversible error, as this is exactly the manner in which the Federal Circuit has held the ENs must not be used.

As the government recognizes, unlike the HTSUS, which is passed by Congress, the ENs are non-binding opinions by an international organization. Gov. MSJ 18; *Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1280 (Fed. Cir. 2016). Thus, the Federal Circuit has specifically held that courts may not use the ENs "to narrow the language of the classification heading itself." *Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1359 (Fed. Cir. 2003). Here, heading 4910 expressly covers "Calendars *of any kind*" and, whatever the ENs

---

[3] Notably, the Court does not dismiss the Cambridge English Dictionary as "inconsistent with … the majority of the dictionary sources," *id.*, as the government does. The Court routinely cites this source. CIT Op. 13 & n.17, 14 nn.21 & 22.)

say, they "cannot create an exception to an HTSUS heading" that eliminates any kind of calendar from heading 4910. *Apple Inc. v. United States*, 964 F.3d 1087, 1095 (Fed. Cir. 2020). Heading 4910 includes no exceptions—it is perfectly clear that any and all calendars are within its scope, and so EN 49.10(a), which purports to create an exception to this definition for "engagement calendars," must be disregarded.[4] Gov. MSJ 19. Nor can the ENs create an ambiguity where none exists. *Apple*, 964 F.3d at 1096. The government quotes from the ENs at length to avoid agreeing with Blue Sky's analysis of the dictionary definition of "calendar" but cannot avoid the simple, unambiguous sweep of heading 4910—calendars **of any kind**, including those kinds of calendars presented in weekly format and those in which users and can make extensive notations.

### B.    A Comparison to Similar Products Confirms Blue Sky's Interpretation

When understanding the nature of Blue Sky's weekly/monthly planners, it is useful to consider unchallenged classifications of other products. Here, a review of the Mead planners and the Vista Week-to-View organizers and their attendant classifications confirms Blue Sky's interpretation.

First, the Vista organizer planner. Vista Stationery & Print Ltd. produces week-to-view planners with weekly calendar pages that Customs unequivocally classified in subheading 4910.00.4000 in Customs Binding Ruling Letter NY N350537, dated July 2, 2025. The Vista planner product has weekly layouts virtually identical to the Blue Sky weekly layout, with large tabular rows for each day of the week and added columns for scheduling notations specific to each of several family members. *See* Declaration of Elaine Peterson, attached, ¶¶ 16-19.[5] Each section

---

[4] In any event, the only court to have considered the classification of engagement calendars has held they are "calendars," and did so with an even *narrower* term at issue in the TSUS, "calendars of paper." *Charles Scribner's Sons v. United States*, 574 F. Supp. 1058, 1059 (CIT 1983).

[5] Blue Sky recognizes that summary judgment briefing is closed and does not seek to introduce the declarations to reopen the evidentiary record but merely to provide complimentary background facts useful to the Court's analysis.

is 9.5" long and 1" high, which is similar in size to Blue Sky's weekly/monthly planner. *Id.*, ¶ 18. Further, both products are structured, sold, and marketed in the same manner. *Id.*, ¶ 41. The Vista product is virtually identical to Blue Sky's products, extensively written in and used for the exact same planning purpose, and is properly classified by Customs as a calendar. Importantly, Customs issued this binding ruling after this litigation started and has not sought to revoke or change this ruling. The Federal Circuit has held that such binding Customs' rulings are entitled to *Skidmore* deference. *Mead Corp. v. United States*, 283 F.3d 1342, 1346 (Fed. Cir. 2002).

Second, and by contrast, consider the Mead Planners, five models of which were at issue in *Mead*. This Court correctly recognized that Blue Sky's products are completely unlike the planners at issue in *Mead*, which were in three-ring binders, not bound, and which contain an undated grid which allows users to fill in dates rather than a calendar. CIT Op. 15. The fact that the Mead grid is undated allows users to customize it as they see fit and ensures that, no matter when one purchases the product, there is no waste for since-passed dates. Peterson Decl. ¶¶ 8-13. By contrast, the Blue Sky planner is dated for calendar year 2021 only, with preprinted calendar year 2021 weekly, monthly, and yearly calendars, and rapidly lost value to zero after the start of calendar year 2021. *Id.*, ¶ 31, This distinction matters as it represents the fundamental difference between calendars, which are dated and organized in a calendar format, and heading 4820 products, such as notebooks, which are undated nor presented in any type of organized calendar format.

The government claims that *Mead* is "instructive with respect to the proper analysis of the tariff term." Gov.MSJ 23. Actually, the government admits that "[t]he *Mead* court did not consider

---

The attached Peterson Declaration clarifies the nature of the product which Customs itself classified as a calendar; it is offered to show the government's changing interpretation on the issue before the court, not to prove a question of fact. Similarly, the attached Japlit Declaration reflects the plain meaning of the term *calendar* and goes to the question of law before the Court. To the extent the Court determines they exceed the Court's page limitation, it can disregard them.

the calendar provision," *id.*, so it is hard to see how this Court can be informed by an analysis not conducted by the Federal Circuit. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Svcs., Inc.*, 543 U.S. 157, 170 (2004).

## II.     EVEN UNDER GRI 3, BLUE SKY'S PLANNER'S ARE CALENDARS

The Court need not reach GRI 3 as the GRI 1 inquiry resolves the classification question as described above. However, if the Court believes that the self-titled "weekly calendar" section is not a calendar despite meeting the calendar definition then it must turn to GRI 3, which concerns when goods are *prima facie* classifiable under two or more headings.[6] Here, if the Court believes that the weekly calendar pages raise an ambiguity as to the overall product, GRI 3 provides a framework for evaluating a part-calendar and part-non-calendar product.

GRI 3(a) states that "the most specific description shall be preferred to headings providing a more general description." There is no question that the heading 4910 term "Calendars of any kind" is necessarily the far more specific description compared to the government's proposed 4820 heading, which contains a jumble of *sixteen* different exemplars of stationery products, none of which the government argues applies to Blue Sky's products. The government must necessarily agree—under GRI 3(a), a court looks to "the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1373 (Fed. Cir. 2009). The entire premise of the government's argument is that heading 4820 is broader and easier to satisfy than the term "calendar" in heading 4910 which Blue Sky advances. Gov. MSJ 23-24. The government's effort to narrow heading 4910 to exclude Blue Sky's products, as well as other kinds of calendars, ironically forces

---

[6] GRI 2, concerning unfinished articles and mixtures, is not relevant.

it to concede that heading 4910 is the narrower and more specific heading for GRI 3(a). But even if the Court proceeds to GRI 3(b), the analysis leads to the same outcome.

Under GRI 3(b), the Court considers the "essential character" of a part-calendar and part-non-calendar product. GRI 3(b) is the only instance in which a product's "essential character" is considered. Even assuming that weekly calendars are something other than a calendar because they necessarily have more space to write notations—as a whole, applying GRI 3(b), the weekly/monthly planner has the essential character of a printed calendar, not a generic heading 4820 paper product. Therefore, it is properly classified under heading 4910.[7]

GRI 3(b) provides that goods "shall be classified as if they consisted of the material or component which gives them their essential character." Explanatory Note VIII provides: "The factor which determines essential character will vary as between different kinds of goods. It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods." *The Pillsbury Co. v. United States*, 431 F.3d 1377, 1380 (Fed. Cir. 2005) (quoting the EN).

Despite the government's claims, the GRI 3 inquiry is not a mere mechanical comparison of the different parts of the overall product. *E.g.*, *id.* (affirming decision that a sorbet dessert coating, although "a marginally greater percentage of the total weight and cost," did not predominate over the ice-milk core of the frozen dessert); *see also Arko Foods Int'l, Inc. v. United States*, 654 F.3d 1361, 1365 (Fed. Cir. 2011) ("[W]e decline the government's invitation for this court to adopt an exact percentage of milk which must be included in order for something to be an article of milk. Instead, we believe that the essential character test should govern."). The weekly calendar portion of the weekly/monthly planner has more pages than the monthly calendar, but

---

[7] To the extent the Court cannot determine essential character, GRI 3(c) provides that the planner is classified in the heading that comes last in numerical sequence, which, in this case, is heading 4910.

that is not the question under GRI 3. Rather, when considering essential character, the Court must look at each of the components and how they operate together as a whole. *Home Depot U.S.A., Inc. v. United States*, 491 F.3d 1334, 1337 (Fed. Cir. 2007) (noting that "the trial court was correct to look at all of the structural components in determining the essential character of the light fixtures, rather than just focusing on the frame of the imported goods").

The government contends that the presence of space for notetaking in the weekly view renders the entire product "essentially" not a calendar despite its yearly and monthly calendars. Gov. MSJ 20-21. But very few customers would be interested in purchasing a calendar which only allows a fleeting reference to a date and does not allow the user to note an upcoming dentist appointment or the address of the restaurant hosting happy hour that evening. The government contends that the "purpose of [a] calendar is for the user to be able to determine where a particular day fits in reference to other days/weeks/months in the year." ECF No. 29 ("Gov.-Reply") at 3. We agree, and this is precisely why the essential character of the Blue Sky weekly/monthly planner is imparted by its calendars. People use a calendar to identify which dates in the future they need to notate about. Without the calendars, there would be nothing upon which to notate.

The government's strained position also ignores the interrelation between the monthly and weekly calendars. Knowing that March 16th is a Monday in 2026 is not useful in the abstract and is easily lost to memory; it is only useful because the user can then notate things to remember about that day. That is the essential character of any calendar—a reference and planning tool one builds their life around. The addition of a weekly view portion that allows for even more calendar planning does not make a calendar not a calendar; it just makes the calendar even more useful.

### III.    CONCLUSION

The government admits that monthly planners with ample space for taking notes in lined calendars boxes for each day are calendars and that weekly planners with even more space for

writing notes than Blue Sky's products are also calendars. The government's concessions are well-founded and illustrate the force of Blue Sky's common-sense interpretation of the heading term "calendars."

Yet, the government asks this Court to disregard its own admissions, and Congress's plain language in heading 4910 that the provision covers "**Calendars <u>of any kind</u>**," in favor of a reading of the ENs that would impermissibly narrow the scope of heading 4910 to only those calendars which limit writing space to a yet undefined writing area. But this argument violates controlling Federal Circuit precedent that the ENs may not limit the scope of heading language in this manner.

The Court should interpret the heading term "Calendars of any kind" and apply the GRIs consistent with the common and commercial definitions of "calendar," common sense, and binding precedent, enter judgment for Blue Sky, and classify all four models of Blue Sky's calendar year 2021 weekly/monthly planners in subheading 4910.00.2000. If the Court does not grant summary judgment for Blue Sky, Blue Sky respectfully requests a bench trial with expert witnesses to provide the additional factual evidence the Court may need to resolve these issues.

Dated: March 16, 2026

Respectfully Submitted,

By: /s/ Christopher J. Duncan
Christopher J. Duncan
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Phone: (213) 689-6579
Email: chris.duncan@squirepb.com

By: /s/ Elon A. Pollack
Elon A. Pollack
STEIN SHOSTAK SHOSTAK POLLACK
& O'HARA LLP
445 S. Figueroa St., Suite 2388
Los Angeles, CA 90071
Phone: (213) 630-888
e-mail: elon@steinshostak.com