UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

|  | : |  |
| --- | --- | --- |
| BLUE SKY THE COLOR OF IMAGINATION, | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00624 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

MONICA P. TRIANA
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
*Attorneys for Defendant*
Tel. No. 212-264-9240

Of counsel:
Yelena Slepak, Esq.
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

**TABLE OF CONTENTS**

STATEMENT OF THE CASE..................................................................................................1

   I.    Factual and Procedural Background ...............................................................1

   II.   Merchandise At Issue....................................................................................3

ARGUMENT........................................................................................................................4

   I.     THE WEEKLY/MONTHLY PLANNERS ARE NOT "CALENDARS" ..................4

   II.    THE TRIAL COURT CORRECTLY HELD THAT THE MERCHANDISE IS
            CLASSIFIED IN HEADING 4820, HTSUS...............................................8

CONCLUSION...................................................................................................................14

**TABLE OF AUTHORITIES**

## Cases

*Aves in Leather, Inc. v. United States*,
423 F.3d 1326 (Fed. Cir. 2005).......................................................................................... 9, 10

*Blue Sky The Color Of Imagination v. United States*,
160 F. 4th 1334 (Fed. Cir. 2025) ........................................................................................*passim*

*Blue Sky The Color Of Imagination v. United States*,
698 F. Supp. 3d 1243 (Ct. Int'l Trade 2025) ......................................................................*passim*

*DeGussa Corp., v. United States*,
508 F.3d 1044 (Fed. Cir. 2007)................................................................................................ 6

*Mead Corp. v. United States*,
283 F.3d 1342 (Fed. Cir. 2002)......................................................................................... 2, 10

*Rollerblade, Inc. v. United States*,
282 F.3d 1349 (Fed. Cir. 2002)............................................................................................ 11

*Totes, Inc. v. United States*,
69 F.3d 495 (Fed. Cir. 1995)............................................................................................ 9, 10

*Well Luck Co., Inc. v. United States*,
887 F.3d 1106 (Fed. Cir. 2018)............................................................................................ 11

## Statutes

Section 301 of the Trade Act of 1974, Pub. L. 93-618, 19 U.S.C. § 2411 .................................... 2

## Harmonized Tariff Schedule of The United States

Chapter 48

Heading 4820 ....................................................................................................................*passim*

Subheading 4820.10.20............................................................................................... 2, 9, 11

Subheading 4820.10.40...................................................................................................*passim*

Chapter 49

Heading 4910.........................................................................................................2, 3, 8, 12

Subheading 4910.00.20...........................................................................................2, 4

Chapter 99

Subheading 9903.88.03.................................................................................................2

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

|  |  |  |
|---|---|---|
| BLUE SKY THE COLOR OF IMAGINATION, | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00624 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Following remand from the United States Court of Appeals for the Federal Circuit, Defendant, the United States (Government), respectfully submits this supplemental memorandum of law, summarizing its position and addressing any additional arguments in opposition to the motion for summary judgment filed by plaintiff, Blue Sky The Color Of Imagination (Blue Sky or plaintiff), and in support of our cross-motion for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of International Trade (USCIT), seeking classification in subheading 4820.10.40, Harmonized Tariff System of the United States (HTSUS). *See* ECF Nos. 25, 29, 55.

**STATEMENT OF THE CASE**

**I.    Factual and Procedural Background**

This case challenges U.S. Customs and Border Protection's (Customs) classification of Blue Sky's weekly/monthly planners in subheading 4820.10.40, HTSUS. Blue Sky entered its merchandise under subheading 4910.00.20, HTSUS, as "calendars," a duty-free provision. At liquidation, Customs classified the merchandise in subheading 4820.10.40, HTSUS, which

1

covers, in relevant part, "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . [r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . [o]ther," a duty-free provision.[1]

In its initial decision, this Court determined that the weekly/monthly planners were classified in heading 4820, HTSUS, as "diaries" within subheading 4820.10.20, HTSUS, and further determined that they were excluded from classification in heading 4910, HTSUS. *Blue Sky The Color Of Imagination*, 698 F. Supp. 3d 1243, 1245, 1251-53 (Ct. Int'l Trade 2025) (*Blue Sky I*). On appeal, the Federal Circuit, applying the doctrine of *stare decisis*, reversed and remanded this Court's decision, declining to accept the Court's classification of the weekly/monthly planners in subheading 4820.10.20 as "diaries." *Blue Sky The Color Of Imagination*, 160 F. 4th 1334, 1339-40 (Fed. Cir. 2025). Specifically, the Federal Circuit noted that in its decision in *Mead Corp. v. United States*, 283 F.3d 1342, 1348 (Fed. Cir. 2002), a "diary" was determined to contain information that is "retrospective, not prospective," and this Court found that the weekly/monthly planners at issue are "used to note *future* appointments." *Blue Sky*, 160 F.4th at 1339-40. (emphasis in original). Importantly, the Federal Circuit, however, did not determine that the merchandise was not classifiable in heading 4820, the provision in which Customs classified the merchandise at liquidation. To the contrary, in remanding to this Court to determine the classification in the first instance, the Federal Circuit

---

[1] The merchandise was concurrently classified under subheading 9903.88.03, HTSUS, at a duty rate of 25 percent *ad valorem* pursuant to Section 301 of the Trade Act of 1974 (Pub. L. 93-618, 19 U.S.C. § 2411). Blue Sky's claimed classification was not subject to Section 301 duties at the time of entry.

acknowledged that the "Government . . . offer[ed] some seemingly persuasive arguments for why Blue Sky's product falls within [] heading 4820, as opposed to heading 4910." *Id.* at 1340.

## II.    Merchandise At Issue

As noted in our previous submissions, ECF No. 25 at 1, three categories of merchandise were summonsed: (1) desk pads; (2) monthly planners; and (3) weekly/monthly planners. Because the parties agreed as to the classification of the monthly planners and desk pads, the only issue before the court is the classification of the weekly/monthly planners.  *Id.*

The weekly/monthly planners all have similar characteristics.  *See* Def. Exs. A-D (Production Files for Weekly/Monthly Planners).[2]  To summarize what is set forth more fully in our original submission, *see* ECF No. 25 at 3-13, the weekly/monthly planners are called "planner[s]" on the packaging material, the title page, Def. Exs. A-D, and in Blue Sky's marketing material.  Pl. Ex. 13.[3]  They measure either 8.5 x 11 inches or 5 x 8 inches, and include the following features: a yearly overview page showing monthly calendars for a two-year period, a page for writing your name, address and yearly goals, a contacts page, and a page to identify important dates for each month.  Def. Exs. A-D; Pl. Ex. 13.  The weekly/monthly planners include two-page monthly view pages for the six months prior to the date range covered by the planners, followed by tabbed sections for each month of the year covered, which includes a two-page monthly view of each month, and then two-page weekly view pages covering each week of the month.  Def. Exs. A-D.  Each two-page weekly view page includes lined sections for each day (between 8 and 11 lines of writing space), and some have additional smaller lined sections for "weekly to do" and "notes."  *Id.*  In total, more than 2/3 of the pages in the

---

[2] Defendant's Exhibits are attached to its Cross-Motion For Summary Judgment.  ECF No. 25.
[3] Plaintiff's Exhibits are attached to its Motion For Summary Judgment.  ECF No. 20.

weekly/monthly planners are weekly view pages. *Id.* The planners also have five fully lined notes pages, a page listing all holidays, and some include a page with a map of the United States. *Id.*

Sales and Marketing material provided by Blue Sky indicate that the weekly/monthly planners are used for individuals to plan their time, often referencing "[t]wo-page weekly and monthly calendar layouts [that] offer *extra writing space* . . . two-sided storage pocket, reference calendars, and extra notes pages," Def. Ex. P. (Stapes Website/ Item No. 110394); Def. Ex. O (Deposition of Warren Vidovitch) at 27:10-24, and noting that the item has "everything you need to organize tasks and be more productive." Def. Ex. P; *see also* Def. Ex. Q (Staples Website/Item No. 111291) (descriptive information for Item No. 111291, provided by Blue Sky, including "lined weekly and monthly views for organized writing, extra notes pages, and reference calendars").

## ARGUMENT

## I.    THE WEEKLY/MONTHLY PLANNERS ARE NOT "CALENDARS"

As set forth more fully in our opening brief, the legal standard for construing a tariff provision requires application of the General Rules of Interpretation (GRI), and consideration of the Explanatory Notes (EN). ENs, while not statutory, are the official interpretation of the Harmonized System at the international level and are intended to clarify the scope of tariff provisions. *See* ECF No. 25 at 15-16. As expressed in its opinion, this Court's interpretation of the term "calendars" in subheading 4910.00.20, HTSUS, Blue Sky's preferred classification, is supported by the plain language of the statute, as is required under GRI 1, and is consistent with the ENs. *Blue Sky I*, 698 F. Supp. 3d 1249-1254.

4

Starting its analysis at the chapter and heading level, this Court noted first that Chapter 49 covers printed material – *i.e.*, "*printed* books, newspapers, pictures, and other *products of the printing industry*; manuscripts, typescripts and plans." *Blue Sky I,* 698 F. Supp. 3d at 1251 (emphasis added). The trial court then correctly looked to the dictionary definition of the *eo nomine* term "calendars" from the *Oxford English Dictionary*, which defined "calendar" as a "system according to which the beginning and length of successive civil years, and the subdivision of the year into its parts, is fixed . . ." or a "table showing the divisions of a given year into its months and days, and referring the days of each month to the days of the week . . . ." *Blue Sky I*, 698 F. Supp. 3d at 1251-52. Indeed, as this Court properly held, "calendars" are "charts for showing the divisions of a year." *Id.* at 1252.

This is correct and consistent with almost every other dictionary source identified in our opening brief. ECF No. 25 at 17-18. To briefly identify some of those definitions, according to *Webster's New Collegiate Dictionary* (1979) at 155, a calendar is a "1: a system for fixing the beginning, length and divisions of the civil year and arranging days and longer divisions of time (as weeks and months) in a definite order . . . 2: a tabular register of days according to a system usu. covering one year and referring the days of each month to the days of the week . . . ." Def. Ex. T. *Webster's New World Dictionary*, *Third College Edition* (1988) at 198, defines a calendar as "1 a system of determining the beginning, length, and divisions of a year and for arranging the year into days, weeks, and months 2 a table or chart that shows such an arrangement, usually for a single year." Def. Ex. U. The BLACK'S LAW DICTIONARY (7th Edition 1999) at 195, defines a calendar as "1. A systematized ordering of time into years, months, weeks, and days . . . ." Def. Ex. W. A common thread throughout these definitions, including the one relied upon by this Court, is that the term "calendar[]" is a system or chart representing the days, weeks or

months of the year.  Typically, a calendar must include a table or grid – some kind of visual

depiction – to identify the breakdown of the year by days, weeks and months.  The purpose of a

calendar is "fixing," "arranging" or "determining" where each particular day fits in reference to

other days/weeks/months in the year.  *See supra* at 5.

Then, this Court appropriately looked to the ENs for guidance, as they are "generally

indicative of the proper interpretation of a tariff provision."  *DeGussa Corp., v. United States*,

508 F.3d 1044, 1047 (Fed. Cir. 2007); *see* ECF No. 25 at 16.  The emphasis in EN 49.10 is on

printing, consistent with the stated coverage of Chapter 49, *i.e.*, covering various items of "the

printing industry."  General EN to Chapter 49 states that "[w]ith . . . few **exceptions . . .** this

Chapter covers *all printed matter* of which the essential nature and use is determined by the fact

of its *being printed* with motifs, characters or pictorial representations."  (italics added, bold in

original).  A more fulsome review of the EN confirms this interpretation and provides further

guidance.  EN 49.10 states:

> This heading relates to calendars of any kind whether they are
> printed on paper, paperboard, woven fabric or any other material,
> **provided** that the printing gives the article its essential character.
> They may contain, in addition to the normal sequence of dates*,*
> days of the week, etc., various other items of information, such as
> notes of important events, festivals, astronomical and other data,
> verses and proverbs. They may also incorporate pictorial or
> advertising matter. However, publications sometimes improperly
> called calendars which, although dated, are published essentially to
> give information concerning public or private events, etc., are
> classified in **heading 49.01** (unless falling in **heading 49.11** as
> publicity matter.)
> . . .
> The heading, however, **does not cover** articles whose essential
> character is not determined by the presence of a calendar.
>
> *The heading also **excludes:***
> *(a) Memorandum pads incorporating calendars and diaries*
> *(including so-called engagement calendars) (**heading 48.20**)* . . . .

6

*Id.* (italics added, bold in original). Like the definitions, the EN explains that a calendar includes the "normal sequence of dates, days of the week, etc." and, as this Court noted, the "printing" on the item reflecting the features of a calendar must "give[]the article its essential character." EN 49.10; *Blue Sky I,* 698 F. Supp. 3d at 1251. Additionally, as the EN states, the essential character of the item – the true nature of the item – must be "determined by the presence of a calendar." EN 49.10; *Blue Sky I,* 698 F. Supp. 3d at 1252.

Here, the essential character of the planners is not determined by the presence of a calendar, and they do not, as a whole, satisfy the common meaning of the term. While the items include some calendar pages (a table or grid breaking down the days, weeks and months of the year), the vast majority of the pages, 106 of the approximately 150 pages, do not. Most are weekly view pages that are primarily lined pages that note the days of the week for each month of the year, but do not satisfy the definition of the term "calendar[]." *See e.g.*, Def. Ex. A. Simply including calendar pages does not make the item, in its entirety, a calendar. Moreover, the *printing* on the page – as noted in the EN – does not give the item its essential character. Instead, the essential character of this item is a stationery tool that provides space to allow the user to write down information to plan his or her time in an organized way. This is confirmed by the product's packing materials, *see id.*, its marketing documents, Pl. Ex. 13, and the language provided to its own customers, *see e.g.* Def. Ex. R (Amazon.com/Item No. 1102011); Def. Ex. O at 39:8-40:23, which focuses on the planner's use for year-round scheduling. The marketing language notes, for example, the item's use to keep track of "appointments, reminders, ideas and to-do lists every day of the week" and highlights the presence of "ample lined writing space for more detailed planning." Def. Ex. R. As this Court appropriately noted, while "[p]ortions" of

7

the items may meet the definitions of a calendar, "the whole of each item . . . exceeds Blue Sky's proffered eo nomine classification." *Blue Sky I,* 698 F. Supp. 3d at 1252.

Notably, and as acknowledged by the Federal Circuit, 160 F.4th at 1340, EN 49.10 specifically excludes from the classification "so-called engagement calendars . . . (**heading 48.20**)." EN 49.10; *Blue Sky*, 160 F.4th at 1340; *see also Blue Sky I,* 698 F. Supp. 3d at 1252. "[E]ngagement calendars," which were defined by this Court in its analysis of heading 4820, are precisely the items at issue – books used for the "daily recording of social engagements and other appointments." Def. Ex. Y (Dictionary.com); *Blue Sky I,* 698 F. Supp. 3d at 1254-55, note 24. Whether they also include some calendar pages does not change this analysis.

As this Court already correctly determined, "the products are not merely charts for showing the division of a given year, but rather are bound notebooks that contain charts that meet the calendar definition along with space to write information about each day/month as well as space to write additional notes, addresses, and telephone numbers." *Blue Sky I,* 698 F. Supp. 3d at 1252. The products not only keep track of days, but are used to make notes regarding those days. *Id.* The weekly/monthly planners do not satisfy the common meaning of the statutory term "calendars." Instead, through the application of the GRIs and guidance from the ENs, the articles are planning devices, whereby the user can write down information. As a result, they are not properly classified as calendars of heading 4910, HTSUS. *Id.*

## II. THE TRIAL COURT CORRECTLY HELD THAT THE MERCHANDISE IS CLASSIFIED IN HEADING 4820, HTSUS

As set forth in our original briefing, and herein, the weekly/monthly planners are properly classified in heading 4820, HTSUS, and particularly in subheading 4820.10.40, HTSUS, which covers "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . [r]egisters, account books, notebooks, order

8

books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . [o]ther," a duty-free provision.  Subheading 4820.10.40, HTSUS.  Indeed, the weekly/monthly planners share the same common characteristics and purposes of the exemplars listed in the relevant section of heading 4820.  Although the Federal Circuit, in its recent decision, held that the weekly/monthly planners were not properly classified as a "diaries" under subheading 4820.10.20, HTSUS, its decision specifically acknowledged the "seemingly persuasive arguments" for classification of the items in heading 4820, HTSUS, most notably that "items enumerated within heading 4820 describe stationery items for recording various types of information – many of them with pre-defined templates allowing users to write down information, much like Blue Sky's product." *Blue Sky*, 160 F.4th at 1340.  That is precisely the Government's argument here.

As set forth above, according to GRI 1, the first step in any classification decision is to determine whether a particular heading is appropriate.  If it is appropriate, the Court then must determine where, within that heading, the product falls.  To make this determination, the Court considered the relevant ENs as interpretive tools.  To begin, Chapter 48 covers generally "paper and paperboard; articles of paper pulp, of paper or of paperboard." *See Blue Sky I,* 698 F. Supp. 3d at 1251.  The heading within Chapter 48, heading 4820, contains a list of specific items followed by the general phrase "and similar articles."  If this Court finds that the weekly/monthly planners are not listed *eo nomine* in heading 4820, the rule of *ejusdem generis* requires the classification of the merchandise in that heading.  *Ejusdem generis* is used to determine the scope of the general word or phrase "and similar articles" when, like here, that phrase follows a list of more specific terms.  *See, e.g., Aves. in Leather, Inc. v. United States*, 423 F.3d 1326, 1332 (Fed. Cir. 2005) (citing *Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed. Cir. 1995)).  The appellate

9

court, in *Aves. in Leather, Inc.*, 423 F.3d at 1332, held that "for any imported merchandise to fall within the scope of the general term or phrase [*ejusdem generis* requires that] the merchandise . . . possess the same essential characteristics or purposes that unite the listed exemplars . . . ."  *Id.*

The essential characteristics and purposes of the items listed in the relevant section of heading 4820 (the items ultimately grouped as subheading 4820.10) – registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, and diaries – are that they are stationery items to write down various types of information, a conclusion with which the Federal Circuit agreed.  *Blue Sky*, 160 F.4th at 1340 ("Items enumerated within heading 4820 describe stationery items for recording various types of information – many of them with pre-defined templates allowing users to write down information, much like Blue Sky's product.") Defining the terms within the heading makes this analysis and conclusion clear.

Indeed, according to *Merriam Webster Online Dictionary*, an account book is "a book in which accounts are kept; ledger," Def. Ex. Z at 1, an order book is "a book that shows the number of orders that a company has received from its customers . . . ," *id.* at 7, and a receipt book is defined as either "a book containing [receipts]" or "a book containing forms to be used in giving receipts for payment of money."  *Id.* at 13.  According to *Webster's New Collegiate Dictionary*, a notebook is defined as "a book for notes or memoranda."  Def. Ex. T at 778. Memo pads are defined in *Collins Dictionary* as a "block with tear off pages for writing notes," Def. Ex. V at 16, and a register is "a. a record or list of names, events, items, etc., often kept by an official appointed to do so b. a book in which this is kept . . . ."  *Id.* at 29.  As to the statutory term "diary," the Federal Circuit in *Mead* determined that the common meaning of diary includes items with a space for recording retrospective events of importance.  *Mead*, 283 F.3d at 1348. Therefore, the weekly/monthly planners are classifiable in subheading 4820.10.40, HTSUS,

10

because they are similar to the listed exemplars and share the same characteristics – they are

stationery items used to organize and record a variety of different pieces of information,

consistent with the purpose of the other listed exemplars.  Again, as the Federal Circuit aptly

noted, like here, "many of [the stationery items have] . . . pre-defined templates allowing users to

write down information . . . ."  *Blue Sky*, 160 F.4th at 1340.

Moreover, where merchandise is properly classified under a specific heading but does not

fall within any specific subheading, it is properly classified under the relevant heading's catch-all

provision.  *Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1354 (Fed. Cir. 2002); *see also*

*Well Luck Co., Inc. v. United States*, 887 F.3d 1106, 1117 (Fed. Cir. 2018) (holding that, because

the subject merchandise did not fall within any of the eight-digit level subheadings preceding the

HTSUS subheading with the term "other," it is properly classified under the "other" subheading)

(citing *Rollerblad*e, 282 F.3d at 1354).  Consequently, because the planners are not "diaries" of

subheading 4820.10.20, HTSUS, according the Federal Circuit's decision, they are properly

classified in subheading 4820.10.40, HTSUS.

This analysis is consistent with the reasoning in the relevant ENs, which provide, in

relevant part:

> This heading covers various articles of stationery, **other than** correspondence goods of **heading 48.17** and the goods referred to in Note 10 to this chapter. It includes:
>
> (1) Registers, account books, note books of all kinds, order books, receipt books, copy books, diaries, letter pads, memorandum pads, engagement books, address books and books, pads, etc., for entering telephone numbers.
> . . .
> Some articles of this heading often contain a considerable amount of printed matter but remain classified in this heading (and not in Chapter 49) **provided** that the *printing is incidental to their primary use*, for example, on forms (essentially for completion in manuscript or typescript) and diaries (essentially for writing).

11

> The goods of this heading may be bound with materials other than
> paper (e.g. leather, plastics or textile material) and have
> reinforcements or fittings of metal, plastics, etc.

EN 48.20 (bold in original, italics added).  This more expansive list of products, all of which share unifying common characteristics – stationery items which provide space for writing or recording of various items – confirms this analysis.  As this Court acknowledged, the ENs "clarify that Chapter 48 is for other paper products [*i.e.* 'various articles of stationery'] that can be used to record various kinds of 283 F.3d at 1348information." *Blue Sky I*, 698 F. Supp. 3d at 1251; *see* EN 48.20.

Moreover, EN 48.20, like EN 49.10, highlights the importance of the printed material on the paper product.  Specifically, EN 48.20 provides that where the printing on the item is *incidental* to the primary use of an item, classification remains in heading 4820 (not Chapter 49).  EN 48.20.  Juxtapose this language with EN 49.10, discussed above, which requires that for classification in heading 4910, the printing itself – such as the printing that provides a depiction of days, weeks or months of the year (*i.e.*, a calendar) – must give the item its *essential character*.  EN 49.10.  With respect to the weekly/monthly planner, the printed information is incidental to the main purpose of the item, which is to provide the user with the necessary space to input information in an organized fashion (*i.e.*, it is "mostly for writing," like a diary).  EN 48.20.

Finally, to support the determination that the planners fall within heading 4820, EN 48.20 specifically calls out an item, an engagement book, as classifiable in heading 4820.  EN 48.20.  An engagement book, indistinguishable from the planners at issue, is defined in the *Collins Dictionary* as "a book or diary in which people keep a note of their social and business appointments."  Def. Ex. V.  As stated above, EN 49.10 simultaneously excludes what appears to

12

be an identical item, an engagement calendar, from classification in heading 4910, noting instead that it is classifiable in heading 4820. *See* EN 49.10 (excluding from heading 4910 "Memorandum pads incorporating calendars and diaries (including so-called engagement calendars," which are of "**heading 48.20**)." *See supra* at 8. To be sure, Blue Sky admits that the planners are, among other things, used for that precise purpose, "to note future appointments." Pl. MSJ at 13. The Federal Circuit acknowledged that the inclusion of "engagement book" in the EN for heading 4820, and the exclusion of "engagement calendars" in the EN for heading 4910, is a reason that it found the Government's proposed classification in heading 4820 "seemingly persuasive." *Blue Sky*, 160 F.4th at 1339.

Accordingly, pursuant to the principles of *ejusdem generis*, the planners should be classified within subheading 4820.10.40,[4] as articles "other" than "diaries" within heading 4820 because they are similar to the listed exemplars.

---

[4] In response to the Federal Circuit's inquiry with respect to the 10-digit classification, the Government notes that the proper classification is 4820.10.40.00, HTSUS.

13

**CONCLUSION**

For these reasons, and those stated in our original summary judgment briefing, we respectfully request that this Court grant judgment in the defendant's favor.

<div style="margin-left:40%">

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

By:    /s/ Aimee Lee
       AIMEE LEE
       Assistant Director

       /s/ MONICA P. TRIANA
       MONICA P. TRIANA
       Senior Trial Counsel
       Department of Justice, Civil Division
       Commercial Litigation Branch
       26 Federal Plaza – Suite 346
       New York, New York 10278
       (212) 264-9237

</div>

*Of Counsel:*

Yelena Slepak
*Office of Assistant Chief Counsel*
*U.S. Customs and Border Protection*

Dated:  March 16, 2026

14

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

|  |  |  |
|---|---|---|
| BLUE SKY THE COLOR OF IMAGINATION, | : : : : | |
| Plaintiff, | : | Court No. 21-00624 |
| v. | : : | |
| UNITED STATES, | : | |
| Defendant. | : : | |

CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT
STANDARD CHAMBER PROCEDURE 2(B)

I, Monica P. Triana, trial counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief, relying upon the Microsoft Word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 4,032 words.

/s/ Monica P. Triana

15